**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Jeremy Francis
*francisj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Fax: (212) 643-0500

*Counsel for Plaintiff and the Class*
(additional counsel listed on signature page)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— x

JESSICA BARTON, individually on
behalf of herself and all others similarly
situated,

         Plaintiff,

v.

PRET A MANGER (USA) LIMITED,

         Defendant.

——————————————————————— X

:
:
:
:
:
:
:
:
:
:
:
:
:

**Case No. 1:20-cv-04815 GHW-GWG**

**AMENDED CLASS ACTION
COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

1

Plaintiff, Jessica Barton (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to compensate consumers for the deceptive and misleading business practices of Pret A Manger (USA) Limited (hereinafter "Defendant" or "Pret A Manger") with respect to the marketing and sales of Pret A Manger food products (hereinafter the "Products[1]") throughout the State of New York and throughout the country:

2.     During the Class Period (defined below) Defendant manufactured, sold, and distributed the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products were "Natural."  However, Defendant's advertising and marketing campaign was false, deceptive, and misleading because the Products contain soya, a genetically modified organism ("GMO") as well as numerous other synthetic ingredients. [2]

3.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products were "Natural" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural."  Given that Plaintiff and Class Members paid a premium for the

---

[1] The Products which Defendant deceptively advertises and labels include the following:  Pret Salt & Vinegar Chips, Pret BBQ Chips, Pure Pret Ginger Beer,  Pret Cheddar and Tomato Sandwich, Pret Balsamic Chicken & Avocado Sandwich, Pret California Club Sandwich, Pret Chicken & Bacon Sandwich, Pret Egg Salad & Arugula Sandwich, Pret Tuna Salad sandwich, Pret Turkey & Pesto Sandwich, Pret Chicken Caesar & Bacon on Artisan Sandwich, Pret Ham & Cheese Sandwich, Pret Bang Chicken Wrap, Pret Chicken Bacon & Ranch Wrap, Pret Chef's Salad, Pret Chicken Caesar Salad, Pret's Cuban Sandwich, Pret's BBQ Pulled Pork Hot Wrap, Pret's ham & Cheddar Grilled Cheese, Pret's Blueberry Muffin, Pret's Carrot Cake Cookie, Pret's Chocolate Brownie Cookie, Pret's Chocolate Chunk Cookie, Pret's Chocolate Hazelnut Croissant, Pret's Energy Bagel, and Pret's Pan Au Chocolate.

[2] Defendant may have marketed and sold substantially similar products of which Plaintiff is unaware.  Plaintiff will ascertain the identity of these additional products through discovery.  Plaintiff reserves the right to amend this complaint to include additional food items identified through the course of discovery.

Products based on Defendant's misrepresentations that they were "Natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.     Defendant's conduct violated, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendant breached its express warranties regarding the Products.  Defendant has been be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendant have capitalized on consumers' desires for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[3]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

---

[3] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025; *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Defendant Deceptively Markets and Advertises the Products as "Natural"**

6.     Pret A Manger's logo during the Class Period – which appeared throughout retail outlets and was prevalently featured on the company's advertisements, and, including but not limited to, signage, employee uniforms, cups, napkins, product packaging, and takeaway bags – contained the representation that it sells "Natural Food."







7.      In addition to Pret A Manger's logo, prominent signage in its retail outlets stated, "Freshly prepared, good, natural food."



8.     The labels for many of the Products stated that they were made with "natural ingredients."



9.      Defendant's representations that the Products were "natural" wer false, deceptive, and misleading because the Products contain GMOs and numerous other synthetic ingredients.

**Defendant's Products Contain Synthetic Ingredients**

10.     Despite being advertised as "Natural," Pret A Manger Products contain ingredients including maltodextrin (Pret Salt & Vinegar Chips), citric acid (Pret Salt & Vinegar Chips, Pret BBQ Chips, Pure Pret Ginger Beer), lactic acid (Pret Salt & Vinegar Chips), and malic acid (Pret Salt & Vinegar Chips).  As explained below, these ingredients are synthetic, and not natural.

   a.      **Maltodextrin** is recognized as a synthetic by federal regulations. Maltodextrin is a saccharide polymer that is prepared as a white powder or concentrated solution by partial hydrolysis of corn starch, potato starch, or rice starch using acids and enzymes.  (72 Fed. Reg. 62149, 62166 (proposed Nov. 2, 2007); 21 C.F.R. § 184.1444). Maltodextrin is primarily used as a carrier or bulking agent.  It is a synthetic factory-produced texturizer that is created by complex processing that does not occur in nature. To produce maltodexrin, acids and/or enzymes are applied in sequence to a starch to produce partial hydrolysis (saccharification).  The acids or enzymes convert or depolymerize starch to glucose or maltose molecules.  Once maltose is high enough for maltodextrin, the acids or enzymes are neutralized, removed, or deactivated. (57 Fed. Reg. 23989 (proposed June 5, 1992)).  *See also* Maltodextrins, GMO COMPASS, Dec. 10, 2008, available at http://www.gmocompass.org/eng/database/ingredients/148.maltodextrins.html

   b.      **Citric Acid** (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer

extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, Aspergillus niger.

    c.    **Malic Acid** is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. L (+) malic acid, referred to as L-malic acid, occurs naturally in various foods. Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid, and is therefore synthetic. See 21 C.F.R. §184.1069.

    d.    **Lactic Acid** is a federally-listed synthetic substance that is added to foods as a synthetic flavorant, acidity regulator, and preservative. 21 C.F.R. § 172.515(b); see also Food Ingredients and Colors, E270, Current EU Approved Additives and their E Numbers, http://www.food.gov.uk/policy-advice/additivesbranch/enumberlist#anchor_3. Although lactic acid exists naturally in some foods, it must be synthetically formulated for use as a food additive -- as is the case with the Products -- through commercial fermentation of carbohydrates or by using acetaldehyde and hydrogen cyanide to form lactronitrile, which is then chemically degraded via hydrolysis to form lactic acid. 21 C.F.R. § 184.1061(a).

11.    In addition, the sandwich bread used in Defendant's sandwich Products contains diacetyl tartaric acid esters of mono- and diglycerides, mono- and diglycerides of fatty acids, and ascorbic acid.[4]  In 2018, Defendant was censured by an advertising watchdog for advertising its Products as natural despite containing these ingredients, which, as explained below, are synthetic and not natural.[5]

---

[4] https://bakeryinfo.co.uk/news/fullstory.php/aid/19440/Pret__91natural_92_claim_banned_over_E-numbers_in_bread.html
[5] https://www.theguardian.com/business/2018/apr/18/pret-a-manger-censured-over-natural-sandwich-ingredients-claim

e.   **Ascorbic Acid** is a chemical preservative and is synthetic. *See* 21 C.F.R. § 182.3013.

f.   **Diacetyl tartaric acid esters of mono- and diglycerides**, also know as DATEM, are composed of mixed esters of glycerin in which one or more of the hydroxyl groups of glycerin has been esterified by diacetyl tartaric acid and by fatty acids. The ingredient is prepared by the reaction of diacetyl tartaric anhydride with mono- and diglycerides that are derived from edible sources. *See* 21 C.F.R. § 184.1101.

g.   **Mono- and diglycerides** consist of a mixture of glyceryl mono- and diesters, and minor amounts of triesters, that are prepared from fats or oils or fat-forming acids that are derived from edible sources. The most prevalent fatty acids include lauric, linoleic, myristic, oleic, palmitic, and stearic. Mono- and diglycerides are manufactured by the reaction of glycerin with fatty acids or the reaction of glycerin with triglycerides in the presence of an alkaline catalyst. The products are further purified to obtain a mixture of glycerides, free fatty acids, and free glycerin that contains at least 90 percent-by-weight glycerides. *See* 21 C.F.R. § 184.1505.

**Defendant's Products Contain GMOs**

12.   Defendant's representations that the Products were "Natural" was false, misleading, and deceptive because the Products contain soya, which is known to be derived from GMOs and/or to be synthetically produced.

13.   The term GM foods or GMOs (genetically-modified organisms) commonly refers to crop plants created for human or animal consumption using the latest molecular biology techniques.

11

14.    GMOs are not natural because they grow from seeds that have been modified in a

laboratory.

15.    GMOs are plants that grow from seeds in which DNA splicing has been used to

place genes from another source into a plant. Contrary to Defendant's representations, the

Products use plants or plant derivatives grown or created from GMOs, and are thus not

"Natural."

  **e.**  The following Pret A Manger Products contain soya:

- Pret Cheddar and Tomato Sandwich

- Pret Balsamic Chicken & Avocado Sandwich

- Pret California Club Sandwich

- Pret Chicken & Bacon Sandwich

- Pret Egg Salad & Arugula Sandwich

- Pret Tuna Salad sandwich

- Pret Turkey & Pesto Sandwich

- Pret Chicken Caesar & Bacon on Artisan Sandwich

- Pret Ham & Cheese Sandwich

- Pret Bang Chicken Wrap

- Pret Chicken Bacon & Ranch Wrap

- Pret Chef's Salad

- Pret Chicken Caesar Salad

- Pret's Cuban Sandwich

- Pret's BBQ Pulled Pork Hot Wrap

- Pret's Ham & Cheddar Grilled Cheese

- Pret's Blueberry Muffin

- Pret's Carrot Cake Cookie

- Pret's Chocolate Brownie Cookie

- Pret's Chocolate Chunk Cookie

- Pret's Chocolate Hazelnut Croissant

- Pret's Energy Bagel

- Pret's Pan Au Chocolate

**Defendant's "Natural" Labeling was Deceptive and Caused Injury to Class Members**

16.     Whether Defendant's labeling of the Products as "Natural" was deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

17.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. (Exhibit A).

18.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance

extracted from naturally occurring plants, animals, or mineral sources . . ." . 7 U.S.C. § 6502 (21).

19.     Reasonable consumers do not expect a synthetic chemical with suspected health concerns to be found in a product marketed as "natural," which makes Pret A Manger's "Natural Food" representation deceptive and misleading.

20.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients and/or GMOs.

21.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

22.     Discovering that the ingredients are not natural requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are he or she expected to understand - that these ingredients are synthetic and/or GMOs.

23.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front and side-of-the-Products claims, representations, and warranties that the Products are "Natural."

24.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural" claims to mean that the Products do not contain synthetic ingredients or GMOs.

25.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

26.     Consumers rely on label representations and information in making purchasing decisions.

27.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products during the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

28.     Defendant's deceptive representations and omissions were material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

29.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

30.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

31.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

    a.  Paid a sum of money for Products that were not what Defendant represented;

    b.  Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

32.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

33.     Plaintiff and the Class Members paid for Products that were "Natural" but received Products that were not "Natural." The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

34.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

35.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the

truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

36.     Plaintiff expressly does not request that Defendant be required to label the Products with a GMO disclosure; rather, Plaintiff specifically requests that Defendant: 1) cease advertising or stating the Products as Natural; and 2) inform consumers that the Products contain GMOs and other synthetic ingredients in advertising for the Products.

## JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 Class Members; (2) Plaintiff is a citizen of the State of New York and Defendant Pret A Manger, is a citizen of the United Kingdom; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

38.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

39.     Venue is proper because many Class Members reside in the Southern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

**Plaintiff**

40.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State residing in New York City.  At different times during the Class Period Plaintiff purchased the Products, including the Pret Salt & Vinegar Chips, Pret BBQ Chips,

Pure Pret Ginger Beer,  the Pret Chicken & Avocado Sandwich, the Pret Turkey & Pesto Sandwich, and the Pret Bang Chicken Wrap from different Pret A Manger stores in New York City, New York.  Plaintiff viewed the marketing and advertising for the Products she purchased, which represented that the Products were "Natural."  Plaintiff does not consider a product containing GMOs or other synthetic ingredients to be "natural."

41.     Had Defendant not made the false, misleading, and deceptive representation that the Products were "Natural," Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, she would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. Since the Products Plaintiff received were worth less than the Products for which she paid, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

42.     Defendant is a corporation headquartered in the United Kingdom.  Its Head Office is located at 853 Broadway New York, NY.  There are more than 80 Pret A Manger store locations in the United States, with approximately 55 stores located in New York.

43.     Defendant manufactures, markets, advertises and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

44.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling

practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.

Accordingly, this Complaint is uniquely situated for class-wide resolution.

45.     The Class is defined as all consumers who purchased the Products anywhere in

the United States during the Class Period (the "Class").

46.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a

subclass of individuals who purchased the Products in the State of New York at any time during

the Class Period (the "New York Subclass").

47.     The Class and New York Subclass shall be referred to collectively throughout the

Complaint as the Class.

48.     The Class is properly brought and should be maintained as a class action under

Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and

adequacy because:

49.     Numerosity: Class Members are so numerous that joinder of all Members is

impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members

described above who have been damaged by Defendant's deceptive and misleading practices.

50.     Commonality: The questions of law and fact common to the Class Members

which predominate over any questions which may affect individual Class Members include, but

are not limited to:

      a.   Whether Defendant is responsible for the conduct alleged herein which was
          uniformly directed at all consumers who purchased the Products;

      b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that
          Defendant has engaged in unfair, fraudulent, or unlawful business practices
          with respect to the advertising, marketing, and sale of its Products;

    c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of the Products;

    d.  Whether Defendant's false and misleading statements concerning the Products were likely to deceive the public;

    e.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

51.    Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

52.    Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all Members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

53.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Class.  The Class issues predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

54.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all

persons who were induced by Defendant's uniform false advertising to purchase

the Products as being "Natural."

55.    Accordingly, this Class is properly brought and should be maintained as a class

action under Rule 23(b)(3) because questions of law or fact common to Class Members

predominate over any questions affecting only individual Members, and because a class action is

superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

56.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 55.

57.    New York General Business Law Section 349 ("GBL § 349") declares unlawful

"[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

furnishing of any service in this state . . .."

58.    The conduct of Defendant alleged herein constitutes recurring, "unlawful"

deceptive acts and practices in violation of GBL § 349 and as such, Plaintiff and the New York

Subclass Members seek monetary damages.

59.    Defendant misleadingly, inaccurately, and deceptively advertised and marketed its

Products to consumers.

60.    Defendant's improper consumer-oriented conduct—including labeling and

advertising the Products as being "Natural" —was misleading in a material way in that it, *inter*

*alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for

Defendant's Products and to use the Products when they otherwise would not have. Defendant

made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

61.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Natural."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

62.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

63.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

64.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**<ins>SECOND CAUSE OF ACTION</ins>**
**<ins>VIOLATION OF NEW YORK GBL § 350</ins>**
**(On Behalf of Plaintiff and the New York Subclass Members)**

65.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55.

66.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

67.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails of reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

68.     Defendant's labeling and advertisements contained untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresented that the Products were "Natural."

69.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations—not "Natural."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

70.     Defendant's advertising, packaging and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

71.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

73.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

74.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

75.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members, or in the alternative the New York Subclass Members)**

76.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55.

77.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural".

78.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

79.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

80.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

81.     On March 19, 2019, Plaintiff's counsel filed a Complaint against Defendant in the Southern District of New York, styled Skylar Cunningham v. Pret A Manger, Ltd. and JAB

Holding Company (1:19-cv-02322) alleging, on behalf of a nationwide class of consumers, inter alia, breach of express warranty predicated on the same facts alleged herein. Defendant was thus placed on notice of its breach and given an opportunity to cure its breach, which it refused to do.

82.     Defendant breached the express warranty because the Products are not "Natural" because they contain GMOs and other synthetic ingredients.

83.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

84.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55.

85.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named plaintiffs.

86.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

87.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

88.     Plaintiff and other Members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

89.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

90.     Defendant represented in writing that the Products were "Natural."

91.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirmed and promised that the Products were as represented and defect free and, as such, were "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

92.     As alleged herein, Defendant breached the written warranty by selling consumers Products that were not "Natural."

93.     The Products did not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.  Consequently, Plaintiff and the other Members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members, or in the alternative the New York Subclass Members)**

94.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55.

95.     Defendant, through misleading representations and omissions, enticed Plaintiff and Class Members to purchase the Products.

96.     Plaintiff and the Class Members conferred a benefit on Defendant by purchasing the Products.

97.     By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Members of the Class.

98.     Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct as described in this Complaint.

99.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.

100.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class Members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by, Defendant due to its wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, including statutory and treble damages;

(c) Awarding punitive damages;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated:  September 4, 2020

**THE SULTZER LAW GROUP P.C.**

By:  */s/ Jason P. Sultzer*
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Jeremy Francis
*francisj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Fax:(212) 643-0500

**REESE LLP**
George V. Granade
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

*Counsel for Plaintiff and the Class*
