**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA BARTON, individually on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 1:20-cv-04815 GHW-GWG |
| v. | Hon. Gregory Woods |
| PRET A MANGER (USA) LIMITED, | Oral Argument Requested |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**TO STRIKE CERTAIN CLASS ALLEGATIONS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................... 1

FACTUAL BACKGROUND ....................................................................... 5

ARGUMENT ............................................................................................... 6

I.  Plaintiff's First Amended Complaint Fails on the Merits and Must Be
Dismissed. ..................................................................................... 6

A.  Plaintiff's GBL Claims Fail to Allege Facts Demonstrating a
Reasonable Consumer Would Be Materially Misled. ............... 6

a.  No Reasonable Consumer Would Have Interpreted
"Natural" to Mean 100% Free of "Synthetic" Ingredients,
Even if Those Ingredients Are Identical to Molecules
Found in Nature. ....................................................... 7

b.  No Reasonable Consumer Would Have Interpreted Pret's
Claim of "Natural" to Mean 100% Free of GMOs. .......... 10

B.  Plaintiff Fails to Plead the Elements of a Claim for Breach of
Express Warranty Under New York Law. ............................... 13

a.  Plaintiff's Unreasonable Interpretation of Natural Cannot
Be Construed as a Factual Warranty ............................. 13

b.  Plaintiff Has Not Alleged Timely Notice of Breach to Pret
as Required Under N.Y. U.C.C. § 2-607(3)(a) ................ 14

C.  Plaintiff Does Not State a Claim for Violation of the Magnuson-
Moss Warranty Act. ............................................................. 16

D.  Plaintiff's Duplicative Claim for Unjust Enrichment Fails. ........ 18

II.  In the Alternative, the Court Should Strike Plaintiff's Warranty Class
Allegations. ................................................................................. 20

CONCLUSION .......................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alce v. Wise Foods, Inc.*,
   No. 17-CV-2402, 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ...........................................19

*Anderson v. Jamba Juice Co.*,
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) ...........................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................10

*Axon v. Florida's Nat. Growers, Inc.*,
   813 F. App'x 701 (2d Cir. 2020) ...........................................2, 7, 8

*Bautista v. Cytosport, Inc.*,
   No. 15-CV-9081, 223 F. Supp. 3d 182 (S.D.N.Y. 2016) ...........................................19

*Borenkoff v. Buffalo Wild Wings, Inc.*,
   No. 16-CV-8532, 2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ...........................................19

*Brady v. Anker Innovations Ltd.*,
   No. 18-CV-11396, 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) ...........................................18

*Brazil v. Dole Food Co.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ...........................................17

*Buonasera v. Honest Co.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ...........................................19

*Casey v. Odwalla, Inc.*,
   338 F. Supp. 3d 284 (S.D.N.Y. 2018) ...........................................4, 19

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...........................................15

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) ...........................................18

*Dayan v. Swiss-Am. Prods., Inc.*,
   No. 15-CV-6895, 2017 WL 9485702 (E.D.N.Y. Jan. 3, 2017) ...........................................18

*Feliciano v. Gen. Motors LLC*,
   No. 14-CV-06374, 2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) ...........................................16

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d. Cir 2013)..............................................................................6

*Forsher v. J.M. Smucker Co.*,
   No. 19-CV-194, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) .....................11, 12

*In re Fruit Juice Prods. Mktg. and Sales Practices Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ..............................................................20

*In re Gen. Mills Glyphosate Litig.*,
   No. 16-CV-2869, 2017 WL 2983877 (D. Minn. 2017)...........................................9

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................13

*Gordon v. Hain Celestial Grp., Inc.*,
   No. 16-CV-6526, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ............................18

*Hairston v. South Beach Beverage Co.*,
   No. 12-CV-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..........................17

*Hart v. BHH, LLC*,
   No. 15-CV-4804, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) ............................17

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).............15, 16, 17

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) ..................................................................10

*Kelly v. Cape Cod Potato Chip Co.*,
   81 F. Supp. 3d 754 (W.D. Mo. 2015) ...............................................................10

*Kennedy v. Mondelez Glob. LLC*,
   No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)............................13

*In re KIND LLC "Healthy & All Natural" Litig.*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016)...........................................................10, 12

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014)................................................................19

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017)........................................................................20

*La Fosse v. Sanderson Farms, Inc.*,
   No. 19-CV-6570, 2020 WL 3617786 (N.D. Cal. July 2, 2020)............................17

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020)................................................................8, 14

*Marino v. Coach, Inc.*,
    264 F. Supp. 3d 558 (S.D.N.Y. 2017)......................................................................19

*Marshall v. Hyundai Motor Am.*,
    334 F.R.D. 36 (S.D.N.Y. 2019) ...............................................................................21

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y. 2015)........................................................................20

*Mid Island LP v. Hess Corp.*,
    No. 650911/2013, 2013 WL 6421281 (Sup. Ct. N.Y. Cty. 2013) ...........................14

*Niles v. Beverage Mktg. USA, Inc.*,
    No. 19-CV-1902, 2020 WL 4587753 (E.D.N.Y. Apr. 16, 2020) ...........................15

*Oscar v. BMW of N. Am., LLC*,
    274 F.R.D. 498 (S.D.N.Y. 2011) .............................................................................21

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)..............................................................8, 14, 19

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) .........................................................1, 2, 8, 9

*Petrosino v. Stearn's Prods., Inc.*,
    No. 16-CV-7735, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ...........................14

*Podpeskar v. Dannon Co.*,
    No. 16-CV-8478, 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) .........................3, 13

*Price v. L'Oreal USA, Inc.*,
    No. 17-CV-0614, 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017)...............................19

*Price v. L'Oreal USA, Inc.*,
    No. 17-CV-614, 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018)...............................20

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)......................................................................14

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015)......................................................................19

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .............................................................................20

*Silva v. Hornell Brewing Co.*,
   No. 20-CV-756, 2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020)...........................................4, 17

*Singleton v. Fifth Generation, Inc.*,
   No. 15-CV-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)....................................13, 14, 15

*Weiner v. Snapple Beverage Corp.*,
   No. 07-CV-8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)...........................................20

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015).........................................................................19

**Statutes and Other Authorities**

7 C.F.R. § 66.1(1)(i) (2019) ........................................................................................11

7 C.F.R. § 66.116(b) (2019) ........................................................................................11

7 C.F.R. § 205.605 (2019) ...........................................................................................9

15 U.S.C. 2301(6) ......................................................................................................17

15 U.S.C. § 2301(6)(A) ..............................................................................................16

15 U.S.C. § 2310(d)(3)(C) ..........................................................................................18

16 C.F.R. § 700.3 (2015) ...........................................................................................17

21 C.F.R. § 184.1444(c) (2016) ..................................................................................10

80 Fed. Reg. 69,905-01, 69,906-07 (Nov. 12, 2015)................................................3, 19

83 Fed. Reg. 65,814-01 (Dec. 21, 2018)......................................................................12

Class Action Fairness Act, 28 U.S.C. § 1332 *et seq.* .................................................1, 18

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 *et seq.* .......................... *passim*

N.Y. U.C.C. § 2-607(3)(a) .....................................................................................4, 14

New York's General Business Law §§ 349-50.................................................... *passim*

Defendant Pret A Manger (USA) Limited ("Defendant" or "Pret") respectfully submits this memorandum of law in support of its motion to dismiss[1] Plaintiff Jessica Barton's ("Plaintiff") First Amended Class Action Complaint ("First Amended Complaint" or "FAC") with prejudice or, in the alternative, to strike Plaintiff's warranty-based class allegations.

## PRELIMINARY STATEMENT

Prior to mid-2019, Pret used in-store advertising and labeling that made general references to "natural food" and "natural ingredients." Plaintiff's FAC reads these historical references as representing to consumers that Pret sandwiches, cookies, salads, pre-packaged potato chips and other snacks (the "Products") did not contain a single "synthetic" or processed molecule – as though the products were assembled from ingredients directly harvested from the field. No *reasonable* consumer would have interpreted Pret's references to natural in this way. *See*, *e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing "All Natural" claim and noting that "the reasonable consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes'").

Nonetheless, more than a year after Pret stopped using the term "natural" in its stores, Plaintiff filed this putative class action lawsuit alleging that, at unspecified times in the past, she was deceived by Pret's marketing into purchasing "BBQ Chips," "Ginger Beer," and various sandwiches based on her idiosyncratic belief that these products did not contain any ingredients that, even though chemically identical to ingredients found in nature, had been produced through synthetic means. Plaintiff's claim is implausible. As recognized by the Second Circuit, simply referring to products as "natural" cannot reasonably be construed by consumers to indicate "the

---

[1] As an initial matter, this Court does not have subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332 *et seq.* ("CAFA") because Pret maintains its headquarters and principal place of business in New York, and the vast majority of Pret locations and consumers (including Plaintiff) are located in New York. Pursuant to this Court's September 25, 2020 Order, Pret preserves this jurisdictional challenge and will seek the Court's permission to file a separate motion and briefing in the event the Court does not fully grant this motion.

absolute absence of" synthetic substances. *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020).

Nor can Plaintiff plausibly explain why consumers would care about, or feel deceived by, consuming a sandwich advertised as "natural" containing, for example, a tiny amount of citric acid created from microbial fermentation as opposed to citric acid from squeezed lemons. At the end of either process, the resulting molecule is *identical*. Yet, according to Plaintiff, it was misleading to a reasonable consumer to advertise a product as "natural" if it contained citric acid that was not literally "extracted from the citrus fruit." FAC ¶ 10.[2] The federal government, which regulates the labeling of food, disagrees. Indeed, the USDA document appended to Plaintiff's Amended Complaint —on which she relies for her definition of "natural"— explicitly provides that citric acid derived from fermentation is "nonsynthetic," *i.e.* natural. FAC ¶ 17, Ex. A. at 4. The USDA even permits foods to be marketed and certified as "organic" where they include citric acid and numerous other ingredients derived from natural substances, including all but one of the allegedly "synthetic" ingredients challenged by Plaintiff. Once again, it is simply implausible that a reasonable consumer would have expected food marketed as "natural" to meet even more stringent standards than those applied to organic foods. *See Pelayo,* 989 F. Supp. 2d at 979.

Plaintiff further alleges that certain Products contained genetically modified organisms ("GMO"). Specifically, and without any testing or factual support, Plaintiff speculates that certain sandwiches contained soya ingredients derived from soybeans that *may have been* genetically modified. While Plaintiff alleges that reasonable consumers would have interpreted

---

[2] Pret does not concede that any citric acid present in the Products was "synthetically" produced during the class period. Plaintiff has alleged no test by which it purports to distinguish "synthetic" from naturally produced citric acid. Instead, Plaintiff merely assumes that if citric acid has been disclosed on an ingredients list, it could have been "synthetically" produced.

the term "natural" to exclude the presence of GMOs, her absolutist view of the term natural is precluded by FDA guidance. The FDA has stated that "the use of the term 'natural,' [. . .] was not intended to address food production methods, such as the use of genetic engineering or other forms of genetic modification. . . ." *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69,905-01, 69,906-07 (Nov. 12, 2015) (to be codified at 21 C.F.R. pt. 101) (hereafter "*FDA Natural Policy*"). Plaintiff also ignores further regulations acknowledging that, in the large majority of cases, ingredients derived from GMO and non-GMO soy are indistinguishable and identical at even the molecular level.

Moreover, Plaintiff's contention is belied by the fact that the market for non-GMO products has led to a proliferation of voluntary-third party certifications for manufacturers and retailers who *explicitly* market their products as non-GMO. Given consumers' exposure to widespread marketing and education about non-GMO products, consumers for whom avoiding GMOs is a material part of their purchasing decisions would not have reasonably interpreted the phrases "natural" or "made with natural ingredients" as representations about the complete absence of GMOs. *See*, *e.g. Podpeskar v. Dannon Co.*, No. 16-CV-8478, 2017 WL 6001845, at *5 (S.D.N.Y. Dec. 3, 2017) (dismissing claim based on presence of GMOs because Defendant had not "specifically represent[ed] that its products are [] GMO-free[.]").

Plaintiff asserts facially implausible deceptive advertising claims under New York's General Business Law ("GBL") §§ 349-50 on behalf of a putative class of New York consumers. Plaintiff also seeks to bring implausible claims on behalf of a *nationwide* class against Pret (a chain that primarily operates in New York, but also in a handful of other states) for breach of express warranty, violation of the federal Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment. All of Plaintiff's claims fail because she does not plausibly allege that a reasonable consumer would have been misled by Pret marketing.

In addition, Plaintiff's express warranty claim is also barred because Plaintiff does not allege that she ever provided timely notice of breach to Pret, which is a condition precedent to a breach of warranty claim under N.Y. U.C.C. § 2-607(3)(a).

Plaintiff's claim for violation of the MMWA fails along with Plaintiff's express warranty claim and, as an independent ground, because "natural" advertising is the kind of general statement that does not constitute "[a] written warranty under MMWA because it [does] not warrant that [the] product [i]s free from defect or promise [a] specified level of performance[.]" *See, e.g., Silva v. Hornell Brewing Co.*, No. 20-CV-756, 2020 WL 4586394, at *6 (E.D.N.Y. Aug. 10, 2020) (dismissing MMWA claim based on "all natural" advertising).

Plaintiff's claim for unjust enrichment must be dismissed because it is duplicative of Plaintiff's claims for false advertising and breach of express warranty. *See Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 299 (S.D.N.Y. 2018) (dismissing unjust enrichment claim because "[t]hese facts are the exact same that form the basis of her GBL claims").

Finally, in the event that Plaintiff's warranty claims are not dismissed, this Court should strike her warranty class allegations because these claims are not susceptible to class treatment as a matter of law. The Second Circuit has imposed unique limitations on the types of arguments that may be presented on a motion to strike class allegations on the pleadings. For this reason, Pret will not raise *at this time* the numerous insurmountable impediments to class certification, including, *inter alia*, that (i) Plaintiff lacks standing to bring claims based on products that she never purchased and in states where she never purchased a product; (ii) variations in state law and applicable statutes of limitations will preclude predominance; (iii) variations in product packaging, ingredient sourcing, and consumer expectations with respect to the disparate challenged Products will preclude predominance; and (iv) it will be impossible to reliably

ascertain putative class members, given that Plaintiff herself cannot recall when or where she made any Pret purchases.

Nonetheless, striking the warranty class allegations is appropriate on the pleadings; New York courts have consistently refused to certify express warranty classes under New York law, holding that, because these claims require proof of notice and actual reliance, "individual questions predominate" and "[c]lass certification is therefore inappropriate for these claims." *Famular v. Whirlpool Corp.*, No. 16-CV-944, 2019 WL 1254882, at *9 (S.D.N.Y. Mar. 19, 2019), *leave to appeal denied sub nom. Whirlpool Corp. v. Famular*, No. 19-838, 2019 WL 4839990 (2d Cir. 2019).

## FACTUAL BACKGROUND

Plaintiff alleges that at unspecified times during the "Class Period," a term that is never defined in the FAC, she purchased a variety of Pret products including chips, drinks, and sandwiches from different Pret locations "in New York City." FAC ¶ 40. Plaintiff alleges that she purchased these products in reliance on marketing and/or labeling describing them as "natural" or "made with natural ingredients." *Id*. ¶¶ 8, 40. While alleging that Pret disclosed all ingredients on the Product packaging (*id.* ¶ 22), she nonetheless alleges that Pret's marketing and/or labeling were misleading because Pret Products did not meet her absolutist definition of the term "natural." *Id*. ¶ 40. Specifically, Plaintiff alleges that these Products were not "natural" because they were made with (i) "synthetic" ingredients and (ii) genetically modified soya. *Id*. ¶¶ 2, 29.

While Plaintiff alleges that the Products often contained GMO "soya," *id.* ¶ 12, she implicitly acknowledges that not all soya in the country is made with GMO methods, and she fails to allege that she has verified her claim that the soya in the Products was grown using GMO seeds. Nor does Plaintiff allege that she verified that the Products actually contained versions of

the challenged ingredients that were produced synthetically and not naturally. This is significant

because, among the challenged "synthetic" ingredients, Plaintiff concedes that citric, malic, and

lactic acids do occur naturally in foods. *Id.* ¶ 10. Other ingredients are also indisputably naturally

occurring (including "ascorbic acid" (Vitamin C)) or can be derived from natural ingredients

(including Diacetyl tartaric acid esters of mono- and diglycerides ("DATEM"), Mono- and

diglycerides, and maltodextrin).[3] Plaintiff provides no support or testing for her allegation that it

was the "synthetic" version of the naturally occurring ingredients, and not the 100% natural

version, that was present in the Products.

  According to the FAC, Plaintiff and the putative class members "paid a premium for the

Products" as a result of this campaign and "purchased, purchased more of, and/or paid more for,

the Products than they would have had they known the truth about the Products." *Id.* ¶¶ 3, 35.

## **ARGUMENT**

I. **Plaintiff's First Amended Complaint Fails on the Merits and Must Be Dismissed.**

   A. **Plaintiff's GBL Claims Fail to Allege Facts Demonstrating a Reasonable Consumer Would Be Materially Misled.**

Plaintiff's claims on behalf of the New York Sub-class for violations of §§ 349 and 350

fail because she does not plausibly allege conduct that would have misled reasonable consumers.

"It is well settled that a court may determine as a matter of law that an allegedly deceptive

advertisement [or label] would not have misled a reasonable consumer." *Fink v. Time Warner

Cable*, 714 F.3d 739, 741 (2d. Cir 2013) (citations omitted). The standard is an objective one.

"To survive a motion to dismiss, plaintiffs must plausibly allege that a significant portion of the

---

[3]https://bakerpedia.com/ingredients/datem/#:~:text=DATEM%20is%20an%20emulsifier%20used,is%20derived%20from%20plant%20sources ("DATEM is naturally derived from vegetable sources"); https://www.ams.usda.gov/sites/default/files/media/Glycerides%20TR%202015.pdf ("Mono- and diglycerides occur naturally in food"); https://www.tomsofmaine.com/our-promise/ingredients/maltodextrin ("Typically, maltodextrin is sourced from corn, but it can also come from other starches such as wheat, rice or potato.").

general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements." *Axon*, 813 F. App'x at 704 (internal citations, quotations, and punctuation omitted).

In this case, Plaintiff's claims fail because (i) she does not plausibly allege that reasonable consumers would have understood Pret's now-discontinued claims of "natural" to exclude "synthetic" ingredients, many of which actually exist in identical form in nature and all but one of which are permitted even in their synthetic form in foods labeled "organic;" and (ii) she does not plausibly allege that reasonable consumers would have conflated the term "natural" with a representation that any soya in the Products does not contain GMOs.

### a. No Reasonable Consumer Would Have Interpreted "Natural" to Mean 100% Free of "Synthetic" Ingredients, Even if Those Ingredients Are Identical to Molecules Found in Nature.

Plaintiff fails to plausibly allege that a reasonable consumer would be misled by the use of the term "natural" in the specific context of Pret's advertising. At the outset, Plaintiff's FAC appears to conflate Pret's claim of "natural" with the different, and stronger, claims of "100% natural" or "all natural." None of Pret's Products were advertised as "all natural" or "100% natural." Instead, Plaintiff contends only that certain products were marketed as being "made with natural ingredients." FAC ¶ 8. In *Axon*, the Second Circuit specifically held that, unlike "100% natural," the term "natural" on its own cannot reasonably be construed by consumers to indicate "the absolute absence of" synthetic substances. 813 F. App'x at 705.

Moreover, Plaintiff's proposed interpretation of the term "natural" is facially implausible, because reasonable consumers would not interpret the term "natural" to entirely exclude the allegedly "synthetic" versions of natural molecules, even though those so-called "synthetic" ingredients are expressly permitted by the USDA in foods labeled as "organic," which is a stronger label than "natural." Plaintiff's core allegation seeks to impose an idiosyncratic and

absolutist view of the term "natural" that defies common sense. *See, e.g., Pelayo*, 989 F. Supp. 2d at 978 (dismissing "All Natural" claim and noting that "the reasonable consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes'").

By way of example, Plaintiff suggests that an ordinary consumer would distinguish between citric acid[4] "extracted from the citrus fruit" rather than "synthetically" derived citric acid (actually made through large-scale fermentation processes), even though both substances are chemically identical. Plaintiff's contention is unreasonable on its face, and Plaintiff further undermines her theory of liability by acknowledging that even recognizing this distinction would require "knowledge of chemistry beyond that of the average consumer." FAC ¶ 22. Put simply, Plaintiff cannot "plausibly allege that a significant portion of the general consuming public" would share this extremist interpretation of the term "natural." *See Axon*, Inc., 813 F. App'x at 704; *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) ("[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule") (internal citation and quotations omitted).

Plaintiff alleges that one can "look to the regulatory agencies for their guidance" to determine what a reasonable consumer believes the term "natural" to mean. FAC ¶ 16. But she relies on regulations applicable to *organic* foods for her definitions of the terms "natural" and "synthetic." FAC ¶ 17, Ex. A. As reflected in the USDA document appended to Plaintiff's Amended Complaint, even these regulations explicitly recognize that citric acid derived from fermentation is "nonsynthetic," *i.e.* natural, because it is "created from a naturally occurring biological process." ECF No. 13-1 at p. 4.  The "nonsynthetic" classification would apply with

---

[4] Without any supporting facts, Plaintiff makes the conclusory allegation that the Products contain synthetically derived versions of natural ingredients, including citric acid, malic acid, and lactic acid. But Plaintiff concedes in her complaint that these ingredients occur "naturally in various foods," (FAC ¶ 10) and does not allege any basis, other than sheer speculation, to suggest that these specific ingredients included in the Products were synthetically derived.

equal force to other challenged ingredients, including malic acid and lactic acid. *See* Lactic Acid, Sodium Lactate, and Potassium Lactate*,* USDA National Organic Program (Feb 17, 2015) at 17[5] ("lactic acid is produced naturally in many foods" and "Commercially manufactured lactic acid is a nonsynthetic chemical widely used in the food industry"); L-Malic Acid,   USDA National Organic Program (Mar 13, 2019) at 8[6] ("Commercial quantities of nonsynthetic L-malic acid may also be produced using a one-step fermentation process through biological methods such as microbial fermentation").

In any event, Plaintiff's contention that reasonable consumers would have interpreted "natural" to be synonymous with "organic" has been repeatedly rejected. *See Pelayo*, 989 F. Supp. 2d at 979; *In re Gen. Mills Glyphosate Litig.*, No. 16-CV-2869, 2017 WL 2983877, at *6 (D. Minn. 2017). Even if foods labeled as "natural" were held to the same high standard as "organic" food—which they are not—federal regulations permit foods labeled as "organic" to contain all but one of Plaintiff's challenged substances. Ascorbic, tartaric, citric, lactic, and malic acids and glycerides (mono- and di-) are allowed as ingredients in products labeled as "organic." 7 C.F.R. § 205.605 (2019). Plaintiff's claims therefore seek the nonsensical result of holding foods marketed as "natural" to a more stringent standard than foods satisfying the exacting "organic" standard. *See Pelayo*, 989 F. Supp. 2d at 979 (finding that consumers hold organic products to a higher standard than products labeled "natural," and it would be implausible that a reasonable consumer would believe ingredients allowed in an "organic" product would not be allowed in a "natural" product); *see also In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6.

---

[5] Available at https://www.ams.usda.gov/sites/default/files/media/Lactic%20Acid%20TR%202015.pdf
[6] Available at https://www.ams.usda.gov/sites/default/files/media/Malic_Acid_TR_05%20_13_2019_final.pdf

The only challenged "synthetic ingredient" that is not permitted in organic foods is maltodextrin, which is also generally recognized as safe under federal law and may be "used in food with no limitation other than current good manufacturing practice." 21 C.F.R. § 184.1444(c) (2016). Notably, Plaintiff lists maltodextrin as an ingredient in only a single product – the pre-packaged Pret Salt & Vinegar Chips – a product that no reasonable consumer would expect to be devoid of common and safe food additives. See *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015) ("The Merriam-Webster definition offered by Plaintiff for the term 'natural' . . . is not plausible because the Chips are processed foods, which of course do not exist or occur in nature.") (citation omitted); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) (finding that "[c]ourts have dismissed complaints premised on such logical inconsistences" including when a consumer's understanding of a label contradicts information on the ingredients list).

### b. No Reasonable Consumer Would Have Interpreted Pret's Claim of "Natural" to Mean 100% Free of GMOs.

Plaintiff's claim that Pret's use of "natural" was misleading because of the alleged presence in certain Products of ingredients derived from GMO soya is equally implausible. As an initial matter, Plaintiff alleges only that certain Products contained "soya," which can be grown using GMO or non-GMO seeds. But Plaintiff does not allege any basis, other than speculation, to suggest that the soya in Pret products was derived from GMO seeds.

To survive a motion to dismiss, a plaintiff must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (citation omitted). Because Plaintiff has failed to allege the existence of testing or any other factual basis to support an allegation that Pret Products contained soya grown using GMO seeds, she has failed to cross the line "from

conceivable to plausible" (*id*.) and dismissal is warranted. *See In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 697–98 (S.D.N.Y. 2016) (dismissing claim where plaintiffs failed to plead that testing detected the presence of GMOs in the products they "actually purchased"); *Forsher v. J.M. Smucker Co.*, No. 19-CV-194, 2020 WL 1531160, at *4 (N.D. Ohio Mar. 31, 2020) (dismissing "natural" advertising claim because "[p]laintiff fails to provide any facts showing that the Products contain sugar derived from GMO beets").

In any event, Plaintiff's contention that reasonable consumers would have been misled about the presence of GMO derived ingredients in Pret Products is simply implausible. Plaintiff alleges that regulatory guidance informs the meaning of "natural" to a reasonable consumer, FAC ¶ 17, but conveniently ignores the only available FDA guidance regarding "natural" labeling. The FDA's "longstanding policy for the use of the term 'natural' on the labels of human food" explicitly states that "the use of the term 'natural,' [. . .] was not intended to address food production methods, such as the use of genetic engineering or other forms of genetic modification. . . ." *FDA Natural Policy*, 80 Fed. Reg. at 69,906-07. By Plaintiff's own admission, the FDA's guidance should inform reasonable consumer expectations, and a reasonable consumer therefore would not have expected the term "natural" to address whether the Products contained GMOs.

Moreover, the FDA has specifically addressed labeling of GMOs by defining bioengineered or GMO food as a "food that contains genetic material that has been modified through in vitro recombinant deoxyribonucleic acid (rDNA) techniques and for which the modification could not otherwise be obtained through conventional breeding or found in nature[.]" 7 C.F.R. § 66.1(1)(i) (2019). As for food where none of the ingredients were themselves bioengineered but where ingredients (*e.g.*, soy oil) were derived from bioengineered

sources, the FDA determined that product label does not need to disclose this information. *See* 7 C.F.R. § 66.116(b) (2019) (Voluntary Disclosure).

In any event, federal regulations recognize that in the vast majority of cases, ingredients derived from GMO and non-GMO soy are indistinguishable and identical down to even the molecular level. In 2018 the USDA announced the National Bioengineered Food Disclosure Standard. National Bioengineered Food Disclosure Standard, 83 Fed. Reg. 65814-01 (Dec. 21, 2018) (to be codified at 7 C.F.R. pt. 66). This rule determined that only foods containing "detectable genetic material that has been modified through certain lab techniques and cannot be created through conventional breeding or found in nature" must be disclosed. *Id.* 83 Fed. Reg. at 65816. Importantly, even though unrefined soybeans may meet this standard, the vast majority of refined products made with GMO soybeans do not contain any "detectable genetic material" that could be considered bioengineered. *Id.* 83 Fed. Reg. at 65833 (noting that "[w]hether rDNA can be detected in processed foods will depend on the specific processing conditions for each food ingredient" and that a study of products containing GMO soy identified detectible GMO DNA in only "13% of the soy products").

Given the regulations governing disclosure of GMOs, it is particularly significant that (i) Plaintiff fails to allege any support for her blanket assertion that the soya included in certain Products was actually genetically modified, much less that (ii) testing had identified "detectable genetic material" in any Products. *See In re KIND*, 209 F. Supp. 3d at 697-98; *Forsher,* 2020 WL 1531160, at *4.

Finally, Plaintiff's core contention is belied by the fact that the market for non-GMO products has led to a proliferation of voluntary-third party certifications for manufacturers and

retailers who *explicitly* market their products as non-GMO.[7] Given the sophistication of

consumers and their exposure to widespread marketing and education about non-GMO products,

consumers for whom avoiding GMOs was a material part of their purchasing decisions would

not reasonably have interpreted the phrase "made with natural ingredients" as a representation

about the absence of GMOs.

In *Podpeskar*, the court dismissed as speculative similar claims that yogurt labeled as

"natural" was deceptive because "the cows that produced the milk that produced the yogurt, may,

at some point, have eaten feed made from corn that was genetically modified[.]" 2017 WL

6001845, at *1  The Court held that Plaintiff's claim was facially implausible precisely because

the Defendant has not "specifically represent[ed] that its products are [] GMO-free[.]"*Id.* at *5.

In short, Plaintiff's allegation of deception is simply implausible. No reasonable

consumer could have been misled or deceived by Pret's "natural" labeling and Plaintiff's claims

under GBL §§ 349 and 350 should be dismissed.

### B.  Plaintiff Fails to Plead the Elements of a Claim for Breach of Express Warranty Under New York Law.

#### a.  Plaintiff's Unreasonable Interpretation of Natural Cannot Be Construed as a Factual Warranty

To state a claim for breach of express warranty under New York law, a plaintiff must

allege the breach of "a material statement amounting to a warranty[.]" *Goldemberg v. Johnson &*

*Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). "Whether Plaintiff's

interpretation of [a] label was erroneous or reflected a promise made by Defendant necessarily

depends on what a reasonable consumer would believe." *Singleton v. Fifth Generation, Inc.*, No.

15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016). Accordingly, where a claim for

---

[7] *See*, *e.g.*, https://www.nongmoproject.org/blog/tag/label/; https://www.wholefoodsmarket.com/quality-standards/gmo-labeling.

breach of warranty is based on an unreasonable interpretation of product advertising, the claim must be dismissed. *See*, *e.g.*, *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302, 2020 WL 4006197, at *15 (E.D.N.Y. July 10, 2020) (holding that "[t]he representations Plaintiffs identified do not amount to warranties" because a reasonable consumer would not interpret the term "graham crackers" to represent that crackers were made with predominantly graham flour).

Here, for the same reasons discussed above, a reasonable consumer would not have interpreted the label "natural" as warranting that the Products contained no traces of (i) allegedly "synthetic" ingredients or (ii) GMOs. *See, e.g., Parks*, 377 F. Supp. 3d at 248 (finding that the presence of a synthetic biocide is not a breach of warranty that the Products are 'natural').

### b.  Plaintiff Has Not Alleged Timely Notice of Breach to Pret as Required Under N.Y. U.C.C. § 2-607(3)(a)

"To recover on a breach of warranty claim under New York law, the buyer of the allegedly mislabeled product 'must within a reasonable time after [s]he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (*quoting* N.Y. U.C.C. § 2-607(3)(a)). This requirement is strictly enforced, and "'timely notice is a condition precedent to bringing an action for breach of warranty[.]'" *Singleton*, 2016 WL 406295, at *12 (*quoting Mid Island LP v. Hess Corp.*, No. 650911/2013, 2013 WL 6421281, at *4 (Sup. Ct. N.Y. Cty. 2013)).

In this case, Plaintiff does not allege that she provided any notice of breach to Pret, much less timely notice. Because timely notice is a condition precedent to bringing a breach of warranty claim under New York law, her claim must be dismissed. *See, e.g., Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing claim because "plaintiffs have failed to allege they provided Walgreens with timely notice of the alleged breach of warranty"); *see*

*also Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) ("Plaintiffs' breach of express warranty claim must be dismissed for failure to provide timely notice"); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018) (dismissing warranty claim because complaint contained "no allegations and states no facts showing that notice was provided to defendant" by plaintiff).

Unable to allege requisite notice, Plaintiff's FAC asserts that the notice requirement is excused because Plaintiff's lawyers filed (and then voluntarily dismissed) a prior lawsuit against Pret containing similar allegations. FAC ¶ 81. However, Plaintiff's precise argument – that she need not provide *individual* notice to sustain a warranty claim – has been uniformly rejected by New York Courts. *See Singleton*, 2016 WL 406295, at *12 ("the fact that Defendant may have been aware of similar claims involving Tito's labels did not put Defendant on notice of Plaintiff's particular claims"); *see also Niles v. Beverage Mktg. USA, Inc.*, No. 19-CV-1902, 2020 WL 4587753, at *6 (E.D.N.Y. Apr. 16, 2020) ("Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of the California lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy"), *report and recommendation adopted*, 2020 WL 3445730 (E.D.N.Y. June 24, 2020); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *28 (E.D.N.Y. Aug. 29, 2013) ("Without deciding the issue, [notice provided by other putative class members] is likely insufficient as to any plaintiff other than on whose behalf it was provided").

Moreover, even if notice from other putative class members could be deemed sufficient (and it cannot), Plaintiff cannot meet the requirements of pleading *timely* notice because she fails to plead (i) when she allegedly purchased any Products or (ii) when she allegedly discovered any alleged breach of warranty. This precise issue was addressed in *Tyman v. Pfizer, Inc.*, where the

court dismissed an express warranty claim, noting that "plaintiffs are silent as to when they purchased the Chapstick Products" and "are equally silent as to when they discovered or should have discovered the alleged breach of warranty; that is, that the Products were not '100% NATURAL.'" No. 16-CV-06941, 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017). As the court explained, "[s]ince plaintiffs fails to allege any facts that would permit the Court to conclude that they notified Pfizer of the alleged breaches within a reasonable time after discovering them, they are 'barred from any remedy.'" *Id*. (*quoting In re Frito-Lay*, 2013 WL 4647512, at *27).[8]

### C.   Plaintiff Does Not State a Claim for Violation of the Magnuson-Moss Warranty Act.

Plaintiff also alleges that Pret violated the MMWA, a federal statute that creates a cause of action for breach of any "written warranty" that "affirms or promises that [] material or workmanship is defect free or will meet a specified level of performance over a specified period of time[.]" 15 U.S.C. § 2301(6)(A). To state a claim under the MMWA, however, a plaintiff must first plead the necessary elements of a state law warranty claims. Accordingly, because Plaintiff has failed to plead an express warranty claim under New York law for the reasons identified in Section I.B above, her MMWA claim must be dismissed. *See*, *e.g.*, *Feliciano v. Gen. Motors LLC*, No. 14-CV-6374, 2016 WL 9344120, at *8 (S.D.N.Y. Mar. 31, 2016) ("Given that this Court has dismissed Feliciano's express warranty claim. . . Feliciano' s MMWA claim must also [be] dismissed").

Moreover, even if Plaintiff could state a claim under state law, her MMWA claim fails for the independent reason that the alleged warranty does not qualify as a "written warranty"

---

[8] The timeliness of any notice is particularly relevant here, (i) where Pret discontinued the use of "natural" advertising more than a year before the Complaint was filed, (ii) and several of the Products identified in the Complaint were discontinued *several years* before the Complaint was filed.

under the MMWA. As the Federal Trade Commission has explained in its regulatory

interpretation of the MMWA:

> Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code. However, these disclosures alone are not written warranties under this Act. Section 101(6), 15 U.S.C. 2301(6), provides that a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a "written warranty." A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty.

16 C.F.R. § 700.3 (2015) (footnote omitted). For this reason, "courts regularly dismiss MMWA

claims—even while sustaining state-law breach of warranty claims—where defendants'

representations do not satisfy the MMWA's statutory definition." *Hart v. BHH, LLC*, No. 15-CV-

4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016).

Courts have repeatedly held that "natural" advertising is the kind of general statement

that does not constitute "[a] written warranty under MMWA because it [does] not warrant that

[the] product [i]s free from defect or promise [a] specified level of performance[.]" *See, e.g.,*

*Silva*, 2020 WL 4586394, at *6 (dismissing MMWA claim based on "all natural" advertising); *In*

*re Frito-Lay*, 2013 WL 4647512, at *17 (dismissing MMWA claims because "[a]n 'All Natural'

label does not warrant a product free from defect") (citations omitted); *La Fosse v. Sanderson*

*Farms, Inc.*, No. 19-CV-6570, 2020 WL 3617786, at *3 (N.D. Cal. July 2, 2020) (courts "have

consistently held that '100% Natural' and similar statements constitute 'mere product

descriptions' rather than actionable written warranties under the MMWA"); *Brazil v. Dole Food*

*Co.*, 935 F. Supp. 2d 947, 950, 965–66 (N.D. Cal. 2013) (food product labeling claims, including

" 'All Natural,' fresh, antioxidant, [and] sugar-free" were product descriptions, not promises under the MMWA).[9]

There is no basis for a different outcome here. Pret's use of the term "natural" was neither a written affirmation that the Products were free from defect, nor a promise that the Products would meet a specified level of performance over a specified period of time. As such, even if Plaintiff could adequately plead a state law warranty claim (which she cannot), Plaintiff fails to state a claim for relief under the MMWA.[10]

### D.  Plaintiff's Duplicative Claim for Unjust Enrichment Fails.

Plaintiff's unjust enrichment claim must be dismissed because it is duplicative of Plaintiff's claims for false advertising and breach of express warranty. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) (citations omitted). This is a matter of substantive New York law and, therefore, it makes no difference that federal pleading rules would otherwise permit "unjust enrichment [to] be pleaded in the alternative to other claims." *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526, 2017 WL 213815, at *5 (S.D.N.Y. Jan. 18, 2017) (dismissing unjust enrichment claim) (citation omitted).

---

[9] *See also Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1004 (N.D. Cal. 2012) (claim that certain smoothies were "all natural" was not a written warranty under the MMWA because it was "a general product description rather than a promise that the product is defect free"); *Hairston v. South Beach Beverage Co.*, No. 12-CV-1429, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (challenge to "all natural" label did not state a MMWA claim because the label claims were product descriptions, not written warranties).

[10] Pursuant to 15 U.S.C. § 2310(d)(3)(C), Plaintiff cannot bring her MMWA claim as a class action because "the number of named plaintiffs is less than one hundred." Some courts have held that a plaintiff who does not satisfy this requirement may nonetheless less bring a MMWA class claim because "where its conditions are met, CAFA provides an alternative basis for jurisdiction without regard for the MMWA." *Dayan v. Swiss-Am. Prods., Inc.*, No. 15-CV-6895, 2017 WL 9485702, at *9 (E.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, No. 15-CV-6895, 2017 WL 1214485 (E.D.N.Y. Mar. 31, 2017). Accordingly, in the event that Plaintiff's individual MMWA claim survives, this Court will need to determine whether it has jurisdiction over this case under CAFA and, if so, whether to extend jurisdiction to the Plaintiff's MMWA class claim.

Courts have repeatedly dismissed unjust enrichment claims under these precise circumstances, where they rely on the exact same factual allegations as a GBL claim. *See*, *e.g., Brady v. Anker Innovations Ltd.*, No. 18-CV-11396, 2020 WL 158760, at *12 (S.D.N.Y. Jan. 13, 2020); *Casey*, 338 F. Supp. 3d at 299 (dismissing unjust enrichment claim because "[t]hese facts are the exact same that form the basis of her GBL claims"); *Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16-CV-8532, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018) ("plaintiff's unjust enrichment claim is duplicative of her GBL § 349 claim, and must be dismissed on that basis"); *Alce v. Wise Foods, Inc.*, No. 17-CV-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018); *Bautista v. Cytosport, Inc.*, No. 15-CV-9081, 223 F. Supp. 3d 182, 193-94 (S.D.N.Y. 2016) (same).[11]

Here, Plaintiff's claim that Pret was unjustly enriched by misrepresenting the Products as "natural" is based on the same alleged misrepresentations underpinning her warranty and GBL claims. Accordingly, dismissal is required. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 567-68 (S.D.N.Y. 2016) (dismissing unjust enrichment claim because plaintiff also asserted claims of deceptive acts, false advertising, and breach of express warranty based on the same misrepresentations that products were "natural"); *Parks*, 377 F. Supp. 3d at 248-49 (same); *see also Price v. L'Oreal USA, Inc.*, No. 17-CV-614, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants. . . . Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative.").

---

[11] See also *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014).

Even assuming Plaintiff's claim is not duplicative, Plaintiff does not adequately allege that she did not receive the "benefit of her bargain" when she purchased the Products, which she consumed at no harm to herself. *See, e.g., Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) ("[A] plaintiff must allege that the benefit he or she received . . . was not what was bargained for."); *In re Fruit Juice Prods. Mktg. and Sales Practices Litig.*, 831 F. Supp. 2d 507, 512-13 (D. Mass. 2011) (finding that "benefit of the bargain" arguments require a showing of actual injury or something more than that the products were "unsatisfactory"). Accordingly, her unjust enrichment claim fails on the merits.

## II.     In the Alternative, the Court Should Strike Plaintiff's Warranty Class Allegations.

To succeed on a motion to strike class allegations, a defendant must "demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (citation omitted). Here, no amount of discovery would support plaintiff's warranty-based class claims, which are not susceptible to class treatment as a matter of law.

New York courts have consistently refused to certify express warranty classes under New York law, holding that, because these claims require proof of notice and actual reliance, "individual questions predominate" and "[c]lass certification is therefore inappropriate for these claims." *Famular,* 2019 WL 1254882, at *9; *see also Weiner v. Snapple Beverage Corp.*, No. 07-CV-8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) ("reliance on Snapple's 'All-Natural' label cannot be the subject of generalized proof"); *Price v. L'Oreal USA, Inc.*, No. 17-CV-614, 2018 WL 3869896, at *7 (S.D.N.Y. Aug. 15, 2018) ("individual questions predominate because the validity of each buyer's claim would depend on her knowledge of whether or not the Products contain keratin"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015)

("individual questions predominate because each buyer's knowledge of the truth or falsity of Scotts' advertising claims require evaluation"); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 554 (E.D.N.Y. 2017), *affirmed in part and reversed in part sub nom. Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020) ("common questions of law or fact do not predominate over individual questions because individualized proof is necessary to demonstrate each purchaser's reliance on defendants' alleged misrepresentations"); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011) ("Oscar's New York claims that BMW breached the terms of its express warranty are inappropriate for class treatment"); *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 56 (S.D.N.Y. 2019) ("A multitude of individual questions peculiar to each class member would need to be dealt with at a trial on a breach of warranty claim") (citations omitted).

In light of this overwhelming case law, the elements of a breach of warranty claim – including notice and actual reliance – preclude class certification. No amount of discovery could possibly alter this analysis, and accordingly, if the Court does not dismiss Plaintiff's warranty claims, the Court should strike Plaintiff's warranty-based class allegations.

## CONCLUSION

For the reasons set forth above, Pret respectfully requests that the Court dismiss the FAC in its entirety with prejudice, or alternatively, strike Plaintiff's warranty-based class allegations.

Dated: October 16, 2020

Respectfully submitted,

CROWELL & MORING LLP

By: */s/ Sarah M. Gilbert*
    Sarah M. Gilbert
    Jared Levine
    590 Madison Avenue
    New York, New York 10022
    (212) 223-4000

sgilbert@crowell.com
jalevine@crowell.com

Christopher A. Cole
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2701
ccole@crowell.com
*Pro Hac Vice Forthcoming*

*Counsel for Defendant Pret A Manger (USA) Limited*