**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
*sultzerj@thesultzerlawgroup.com*
Jeremy Francis
*francisj@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA BARTON, *individually on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PRET A MANGER (USA) LIMITED,<br><br>Defendant. | No. 1:20-cv-04815 GHW-GWG<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE CERTAIN CLASS ALLEGATIONS** |

## **TABLE OF CONTENTS**

Table of Contents…………………………………………………………………………………..i

Table of Authorities……………………………………………………………………..ii-v

   I.    INTRODUCTION………………………………………………………………...1

   II.   FACTUAL BACKGROUND…………………………………………………..2

   III.  ARGUMENT………………………………………………………………...3

          A.  Reasonable Consumers Can Expert Products Labeled as "Natural" to
              Contain Exclusively Natural Ingredients…………………………………………3

          B.  Reasonable Consumers Can Interpret "Natural" to Mean Free
              From GMOs…………………………………………………………………….8

          C.  The Complaint Sufficiently Pleads a Claim for Breach of Express
              Warranty…………………………………………………………………10

          D.  The Amended Complaint Alleges Violation of The Magnuson-Moss
              Warranty Act…………………………………………………………...…………12

          E.  The Amended Complaint Adequately Alleges an Alternative Claim for
              Unjust Enrichment……………………………………………………….14

          F.  Pret's Attempt to Strike Plaintiff's Warranty Class Claims is Premature……….14

   IV.   CONCLUSION……………………………………………………………...16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
　795 F.2d 238 (2d Cir. 1986)........................................................12

*Amerol Corp. v. Am. Chemie-Pharma, Inc.*,
　No. CV 04-0940 (JO),
　2006 U.S. Dist. LEXIS 98037 (E.D.N.Y. Mar. 17, 2006)......................................10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
　493 F.3d 87 (2d Cir. 2007)........................................................8

*Ault v. J.M. Smucker Co.*,
　No. 13 CIV. 3409 PAC,
　2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ...............................8, 9, 10

*Axon v. Citrus World, Inc.*,
　354 F. Supp. 3d 170 (E.D.N.Y. 2018) ........................................................5

*Axon v. Florida's Nat. Growers, Inc.*,
　813 F. App'x 701 (2d Cir. 2020) ........................................................4, 5

*Brady v. Basic Research, L.L.C.*,
　101 F. Supp. 3d 217 (E.D.N.Y. 2015) ........................................................13

*Bryant v. Food Lion, Inc.*,
　774 F. Supp. 1484 (D.S.C. 1991)........................................................15

*Chen-Oster v. Goldman, Sachs & Co.*,
　877 F.Supp.2d 113 (SDNY 2012)........................................................15

*Chenensky v. NY Life Ins. Co.*,
　2011 WL 1795305 (S.D.N.Y Apr. 27, 2011)........................................................15

*Cliffstar Corp. v. Elmar Indus., Inc.*,
　254 A.D.2d 723, 678 N.Y.S.2d 222 (App. Div. 1998) ........................................................10

*Dayan v. Swiss-Am. Prod., Inc.*,
　No. 15-cv-06895-DLI-VMS,
　2017 U.S. Dist. LEXIS 1121 (E.D.N.Y. Jan. 3, 2017) ........................................................13

*Diaz v. Paragon Motors of Woodside, Inc.*,
　424 F. Supp. 2d 519 (E.D.N.Y. 2006) ........................................................12

*Foman v. Davis*,
    371 U.S. 178 (1962)..................................................................................................16

*In re Frito-Lay N. Am., Inc.*,
    No. 12-MD-2413 (RRM)(RLM),
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)......................................3, 9, 10, 12

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    No. 13-cv-3073 (NSR),
    2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014)…………………………………..3

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014)........................................................................10

*Henry v. Daytop Vill., Inc.*,
    42 F.3d 89 (2d Cir. 1994) .....................................................................................14

*Hubbard v. Gen. Motors Corp.*,
    No. 95-CV-4362,
    1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996) .........................................12

*Ironforge.com v. Paychex, Inc.*,
    747 F.Supp.2d 384 (W.D.N.Y 2010) ....................................................................15

*Jou v. Kimberly-Clark Corp.*,
    2013 U.S. Dist. LEXIS 173216 (C.D. Cal. Dec. 10, 2013) ......................................6

*Kaatz v. Hyland's Inc.*,
    No. 16-CV-237,
    2016 U.S. Dist. LEXIS 87348 (S.D.N.Y. July 6, 2016) ..........................................13

*Kazemi v. Payless Shoesource Inc.*,
    No.C 09-5142 MHP,
    2010 U.S. Dist. LEXIS 27666 (N.D. Cal. Mar. 16, 2010) ......................................16

*In re Kind LLC "Healthy & All Natural" Litig.*,
    209 F. Supp. 3d 689 (S.D.N.Y. 2014)...................................................................8, 9

*Lewand v. Mazda Motor of Am., Inc.*,
    SACV 17-00620 JVS (JCGx),
    2017 U.S. Dist. LEXIS 219127, *16 (C.D. Cal. Nov. 8, 2017)……………………………...16

*Luib v. Henkel Consumer Goods, Inc.*,
    No. 17-cv-03021 (BMC),
    2018 U.S. Dist. LEXIS 18598 (E.D.N.Y. Feb. 5, 2018)...........................................6

*Mayfield v. Asta Funding, Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y 2015)................................................................15

*Mendelson v. Gen. Motors Corp.*,
  105 Misc. 2d 346, 432 N.Y.S.2d 132 (N.Y. Sup. Ct. Nassau Co. 1980), aff'd,
  81 A.D.2d 831, 441 N.Y.S.2d 410 (2d Dep't 1981).......................................12

*Morales v. Unilever United States, Inc.*,
  NO. 2:13-2213 WBS EFB
  2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9, 2014)...................................8

*Panda Capital Corp. v. Kopo International, Inc.*,
  662 N.Y.S.2d 584 (App. Div. 1997).................................................................11

*Parker v. J.M. Smucker Co.*,
  No. C 13-0690 SC,
  2013 U.S. Dist. LEXIS 120374 (N.D. Cal. Aug. 23, 2013)..........................8, 10

*Parks v. Ainsworth Pet Nutrition*,
  LLC, 377 F. Supp. 3d 241 (S.D.N.Y. 2019) .................................................4, 5

*Paulino v. Conopco, Inc.*,
  No. 14-CV-5145 JG RML,
  2015 U.S. Dist. LEXIS 108165 (E.D.N.Y. Aug. 17, 2015)..........................10, 12

*Pelayo v. Nestle USA, Inc.*
  989 F. Supp. 2d 973 (C.D. Cal. 2013).................................................................4

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................7

*Segedie v. Hain Celestial Grp., Inc.*,
  14-cv-5029 (NSR),
  2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 17, 2015) ..............................5, 7

*Silva v. Smucker Natural Foods, Inc.*,
  No. 14-CV-6154 (JG)(RML),
  2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015)...............................7

*Sitt v. Nature's Bounty, Inc.*,
  15-CV-4199 (MKB),
  2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sep. 26, 2016)........................4, 12, 13

*St. John's Univ., New York v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) ..............................................................14

*In re Tronox Sec. Litig.*,
  No. 09 Civ. 6220,
  2010 U.S. Dist. LEXIS 67664 (S.D.N.Y. June 28, 2010) ......................................................15

*Tsan v. Seventh Generation, Inc*,
  No. 15-cv-00205-JST,
  2015 U.S. Dist. LEXIS 149042 (N.D. Cal. Nov. 3, 2015)........................................................6

*Tyman v. Pfizer, Inc*.,
  No. 16-CV-06941 (LTS) (BCM),
  2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. Dec. 27, 2017) ....................................................12

*Warner v. StarKist Co.*,
  No. 1:18-vb-00406-GLS-ATB,
  2019 U.S. Dist. LEXIS 48587 (N.D.N.Y. Mar. 25, 2019)......................................................14

**Statutes**

15 U.S.C.A. § 2301(6)(A)...............................................................................................................12

28 U.S.C. § 1367(a) .......................................................................................................................13

CAFA ..............................................................................................................................................13

FED. R. CIV. P. 8(d)(2) ...................................................................................................................14

FED. R. CIV. P. 8(d)(3) ...................................................................................................................14

FED. R. CIV. P. 15(a)(2) .................................................................................................................16

Magnuson Moss Warranty Act ...............................................................................................1, 12, 13

N.Y. U.C.C...................................................................................................................................11

Rule 12(f)........................................................................................................................................14

Plaintiff Jessica Barton ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss or, in the Alternative, to Strike Certain Class Claims (ECF. No. 21) filed by Defendant Pret a Manger (USA) Limited ("Defendant" or "Pret"). For the reasons below, Pret's motion should be denied in its entirety.

## I.   INTRODUCTION

By representing many of its food Products[1] as "Natural" until at least mid-2019, Pret was able to charge a premium price for them. Unfortunately for consumers, the Products are not actually natural, but rather contain soya, a genetically modified organism ("GMO"), or numerous other synthetic ingredients.

In its memorandum of law ("Def. Mem."), Defendant does not contest that its representations are false. Rather, it contends that a reasonable consumer cannot interpret "Natural" to mean free from synthetic ingredients or GMOs. This argument is contrary to the well-established caselaw in this Circuit and should be rejected. Nor, at this stage, should the Court entertain Defendant's contention that reasonable consumers do not care whether the ingredients in their Products are natural or derived via an industrial process. That argument is premature and has similarly been rejected by courts in the Second Circuit.

Defendant's arguments with regard to Plaintiff's breach of warranty, and Magnuson Moss Warranty Act ("MMWA") and unjust enrichment claims are similarly meritless. Numerous courts have held that "natural" representations are affirmations of fact that qualify as warranties under New York law. And because the MMWA merely federalizes state warranty law, Plaintiff's MMWA claim is also well-pled. Moreover, under New York's liberal notice requirements,

---

[1] "Products" has the same meaning as in the Amended Complaint. ("Compl. ¶ 1, 1 n.1, ECF No. 13.

1

Plaintiff's initial complaint and Amended Complaint, as well as a prior lawsuit based on the same factual allegations were sufficient to place Defendant on notice of its breach of warranty.   With regards to her unjust enrichment claim, Plaintiff pleads this claim in the alternative, as permitted by the Federal Rules of Civil Procedure and courts in this Circuit.

Finally, Defendant's attempt to strike Plaintiff's warranty class claims is premature.  No discovery has been taken in this matter and Defendant cannot meet its burden of demonstrating that this is the "extraordinary case" in which no amount of discovery will plausibly allow Plaintiff to maintain her class claims.

## II.   FACTUAL BACKGROUND

During the class period, Pret's logo was prevalently featured on the company's marketing and Product packaging and contains the representation that it sells "Natural Food," as illustrated below:



Compl. ¶ 6. Additionally, prominent signage in Pret's retail outlets stated, "Freshly prepared, good, natural food," *id.* at ¶ 7, and many Product labels stated they were made with "natural ingredients." *Id.* at ¶ 89

Pret's "natural" claims were deceptive because the Products contain GMOs and numerous synthetic ingredients. Compl. ¶¶ 10–15. GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant. *Id.* at ¶ 15. The Amended Complaint specifically identifies numerous Products that contain soya, which is known to be

derived from GMOs and/or synthetically produced. *Id.* at ¶¶ 12, 15. The Products also contain synthetic ingredients including maltodextrin (Pret Salt & Vinegar Chips), citric acid (Pret Salt & Vinegar Chips, Pret BBQ Chips, Pure Pret Ginger Beer), lactic acid (Pret Salt & Vinegar Chips), and malic acid (Pret Salt & Vinegar Chips). *Id.* at ¶ 10. In addition, the bread in the sandwich Products contains diacetyl tartaric acid esters of mono- and diglycerides, mono- and diglycerides of fatty acids, and ascorbic acid, all of which are synthetic. *Id.* at ¶ 11.

## III.  ARGUMENT

Defendant effectively concedes that, despite being advertised as "Natural," its Products contained synthetic ingredients and GMO's.  Defendant, contends, however, that no reasonable consumer could interpret its "Natural" advertising to mean free from synthetic ingredients and GMOs, as Plaintiff did.  That argument is staunchly at odds with well-established caselaw in this Circuit and should be rejected by the Court.

### A.  Reasonable Consumers Can Expect Products Labeled as "Natural" to Contain Exclusively Natural Ingredients

Defendant's contention that a reasonable consumer cannot expect a product labeled as "Natural" to be free of synthetic ingredients (Def. Mem. at 7) is refuted by a review of the Second Circuit case law.  Courts in the Second Circuit have repeatedly found no legally significant difference between "all natural" or "100% natural" and "natural" representations and each communicates to a reasonable consumer that the product at issue contains exclusively natural ingredients. *See e.g. In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824, at *29 (E.D.N.Y. Aug. 29, 2013) (denying motion to dismiss where food product contain genetically modified ingredients); *Goldemberg v. Johnson & Johnson Consumer Cos.*, No. 13-cv-3073 (NSR),  2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014), *27 ("[we]

3

cannot find as a matter of law that no reasonable consumer could be misled by [the term 'Active Naturals'] into believing the products contain exclusively natural ingredients."; *Sitt v. Nature's Bounty, Inc.,* 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *43-44 (E.D.N.Y. Sep. 26, 2016) ("although Defendants are correct that [their] representations do not promise that the Product is 'all' or '100%' natural, a reasonable consumer could assume that the Product contains only natural ingredients…"); *Buonasera v. Honest Co.*, Inc., 208 F.Supp.3d 555, 559 (S.D.N.Y. 2016) (denying motion to dismiss claims alleging that hair care and body wash products labeled as "natural" violate the NYGBL for containing synthetic ingredients).

Defendant seeks to avoid the nearly unanimous Second Circuit case law on this point by citing to *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020),  *Parks v. Ainsworth Pet Nutrition*, LLC, 377 F. Supp. 3d 241 (S.D.N.Y. 2019) and *Pelayo v. Nestle USA*, Inc., 989 F. Supp. 2d 973 (C.D. Cal. 2013).  None of these cases, however, support the proposition that a reasonable consumer cannot interpret "Natural" to mean free from synthetic ingredients.   In *Axon* Plaintiff alleged that defendant's brand name, "Florida's Natural" was deceptive and misleading because its orange juice product contained glyphosate, a synthetic herbicide used to kill weeds. *Axon*, 813 F. App'x at 703.   The court concluded that a reasonable consumer could not interpret "natural" to mean free from "*unnatural contaminates"* like glyphosate.  *Id*. at 705. But the court did not overrule the long line of cases establishing that "natural" can be interpreted by consumers to mean free from *synthetic ingredients.*   In fact, the court took great care to distinguish between glyphosate, an "unnatural contaminate" and ingredients that are intentionally added to a product. *See Id.*  ("We agree with the district court that the presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name 'Florida's Natural,' would not

make assumptions regarding the presence or absence of trace amounts of glyphosate."). Accordingly, *Axon* provides no support for Defendant's contention that a "natural" representation cannot be interpreted to mean that a product contains exclusively natural ingredients.[2]

*Parks* similarly involved a claim of glyphosate contamination of food rather than synthetic ingredients. The Court held that trace amounts of glyphosate did not render a "natural" representation deceptive given "the widespread use of herbicides." *Parks*, 377 F. Supp. 3d at 247 (quoting *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018)). The court dismissed the complaint, noting that glyphosates were not added to the product by defendant. The court in *Parks*, however, noted that it would be a different situation where, as here, the defendant had introduced the synthetic or unnatural ingredient. *Id.* at 247 ("It is far more misleading to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process."). Here, Plaintiff's allegations involve intentionally added ingredients, not contaminants from herbicides. As demonstrated by the case law above, reasonable consumers can expect products advertised as natural to be free from synthetic ingredients.

Finally, *Pelayo* is a non-binding case from the Central District of California. Even to the extent that it is instructive, *Pelayo* and its underlying reasoning have been soundly rejected by other courts, including the Southern District. *See, e.g.*, *Segedie v. Hain Celestial Grp., Inc.,* 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, *30-31 (S.D.N.Y. May 17, 2015) (distinguishing

---

[2] Defendant selectively and misleadingly quotes *Axon* to bolster its position. *See* Def. Mem. at 7 ("In *Axon*, the Second Circuit specifically held that, unlike '100% natural,' the term 'natural' on its own cannot reasonably be construed by consumers to indicate 'the absolute absence of *synthetic substances*'" (emphasis added). In actuality, the court only determined that the term natural does not communicate the "absolute absence of *contaminants*." *Axon*, 813 F. App'x at 705.

*Pelayo* and holding that "it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients."); *Jou v. Kimberly-Clark Corp*., 2013 U.S. Dist. LEXIS 173216, at \*30-81 (C.D. Cal. Dec. 10, 2013) (holding that *Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit").

Defendant's argument that reasonable consumers would not consider the ingredients themselves to be synthetic are similarly meritless.  The Amended Complaint describes the process for creating each of the challenged ingredients in detail and explains why that process renders them synthetic.  Compl. ¶ 10.  Whether or not a reasonable consumer would actually consider those ingredients synthetic is a question that cannot be resolved on a motion to dismiss, or even at the summary judgment stage.  *See Luib v. Henkel Consumer Goods, Inc*., No. 17-cv-03021 (BMC), 2018 U.S. Dist. LEXIS 18598 (E.D.N.Y. Feb. 5, 2018).  (holding that summary judgment was not appropriate in a case challenging the "Natural Elements" labeling of laundry detergent because "[w]hether or not the 'Natural Elements' label is materially misleading turns on whether a factfinder determines that a reasonable person would be misled by this label into thinking that the Products contain no synthetic elements . . . I cannot say that it would unreasonable as a matter of law for a factfinder to come out one way or the other on this issue, and thus the inquiry is a factual one.").  *Id* at \* 6.

Moreover, contrary to Defendant's contention, Plaintiff's complaint does not attempt to equate "natural" with "organic" representations.  Def. Mem. at 9.  Rather, Plaintiff merely uses the USDA organic regulations as a guide for how reasonable consumers could interpret Defendant's "Natural" labeling and advertising.  *See* Compl. ¶ 17; *See Tsan v. Seventh Generation, Inc*, No. 15-cv-00205-JST, 2015 U.S. Dist. LEXIS 149042, at \*14-15 (N.D. Cal. Nov. 3, 2015) ("Plaintiffs

look to USDA and NPA sources only for guidance as to what reasonable consumers would consider 'natural', and allege that a reasonable consumer would consider products labeled 'natural' to be free of 'synthetic, highly processed, and/or non-natural ingredients.").  Ultimately, organic food regulations are not definitive as to what a reasonable consumer would consider natural, and Defendant's characterization of the organic labeling standard as "stronger" is self-serving and irrelevant. *Segedie*, *Inc.*, 2015 U.S. Dist. LEXIS 60739, *29-30 ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients . . . This is true even though foods labeled "organic" may lawfully contain some synthetic ingredients. There is no rigid hierarchy that makes 'natural' a more permissive label than "organic" in all respects as a matter of law.").  Accordingly, that some of the challenged ingredients may be permitted in organic feeds has no bearing whatsoever on the plausibility of Plaintiff's claims.

Nor can Defendant evade liability by claiming that the difference between the synthetic and natural versions of various ingredients in the Products is not important to consumers. Def. Mem. at 8-9.  Whether or not a representation is material is also judged according to a reasonable consumer standard.  *See In re Scotts EZ Seed Litig*., 304 F.R.D. 397, 409 (S.D.N.Y. 2015). Courts in the Second Circuit have consistently held that whether or not a product is "natural" is material to a reasonable consumer.  *See, e.g., Silva v. Smucker Natural Foods, Inc*., No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist. LEXIS 122186, *25 (E.D.N.Y. Sept. 14, 2015) (the statements on [defendant's] website, on their face, appear to be oriented towards consumers, as opposed to investors or employees. I cannot conclude as a matter of law that no consumer could plausibly base his decision to purchase Natural Brew, at least in part, on the website's representations [that the product is natural].").  The Complaint alleges that "[r]easonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they

are safer and healthier than alternative products that are not represented as natural."  Compl. ¶ 5.

That is sufficient, at this early stage of the litigation, to plausibly plead that whether an ingredient

is derived naturally or through an industrial process is material to consumers.  *See Morales v.*

*Unilever United States, Inc*., NO. 2:13-2213 WBS EFB 2014 U.S. Dist. LEXIS 49336, *10-11

(E.D. Cal. Apr. 9, 2014) (holding that allegations that consumers are "increasingly concerned"

about the effects of synthetic chemicals, pay a premium for natural products, and that, as a result,

the nationwide market for "natural" products exceeds $100 billion dollars were sufficient to plead

materiality and reliance).

### B.  Reasonable Consumers Can Interpret "Natural" to Mean Free from GMOs

Defendant's representation that the Products are "natural" is also deceptive and misleading

because many of Defendant's salad, sandwich, cookie, and pastry Products contain genetically

modified and/or synthetically produced soya.  Compl.  ¶¶12-15.  Plaintiff's allegation that soya is

well known to be a GMO is sufficient to infer that the soya in Defendant's Products is genetically

modified.  *See Ault v. J.M. Smucker Co.,* No. 13 CIV. 3409 PAC, 2014 U.S. Dist. LEXIS 67118,

at *16-17 (S.D.N.Y. May 15, 2014) ("While Plaintiff is not certain Crisco Oil contains GMOs, the

factual allegations—taken as a whole—are more than sufficient 'to raise a right to relief above the

speculative level.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir.

2007)); *In re Kind LLC "Healthy & All Natural" Litig*., 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2014)

(finding that plaintiff could properly plead that defendant's product contained GMOs based, in

part, on the allegation that 89% of corn in the United States is derived from genetically-modified

ingredients)[3];  *Parker v. J.M. Smucker Co*., No. C 13-0690 SC, 2013 U.S. Dist. LEXIS 120374,

---

[3] Defendant cites *In re Kind* for the proposition that reasonable consumers do not consider "natural" foods to be GMO
free. Def. Mem. 17.  But the court in *In re Kind* recognized that reasonable consumers could expect foods labeled as
"natural" to be free of GMOs.  209 F. Supp. 3d. at 697 (finding such claims "potentially cognizable").  Ultimately the
court held that the plaintiffs could not pursue their "non-GMO claims" because they failed to plead which Products

\*7 (N.D. Cal. Aug. 23, 2013) (holding that an allegation that "[o]ver 70% of U.S. corn, over 90% of U.S. soy, and over 80% of U.S. canola crops are [genetically modified]" was sufficient to plead that Defendant's products contained GMOs).

In its motion, Defendant does not directly dispute Plaintiff's allegations that its Products contain genetically modified soya.  Instead, it cites FDA guidance stating that the FDA's policies regarding the use of the term "natural" were not meant to apply to GMOs.  Def. Mem. 17.  But the FDA's views on the meaning of "natural" are not a substitute for the reasonable consumer test. Defendant in *Ault* similarly argued that a reasonable consumer would not be misled by the product's "All Natural" label "in light of the FDA's policy on bioengineered ingredients and the federal government's regulations governing organic foods." 2014 U.S. Dist. LEXIS 67118, at \* 18-19.  The court held that this argument "misses the mark" because "while any FDA views on what 'natural' means may be relevant to this inquiry, they are not dispositive." *Id*.  *See also In re Kind*, 209 F. Supp. 3d at 697 (holding that "some consumers may seek to avoid GMO-derived food, regardless of what the FDA says about their safety.").

Nor, as Defendant suggests, to the Products need to be explicitly labeled as "non-GMO" for consumers to expect them to be GMO-free.  Reasonable consumers can interpret the representation that the Products are "natural" to mean that they are free from GMOs, which are plants grown from seeds in which DNA splicing has been used to place genes from another source into a plant.  Compl. ¶ 15.  *See In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at \*54 (concluding that the phrase "Made with ALL NATURAL ingredients" could still mislead a consumer into believing the product was GMO-free); *Ault*, 2014 U.S. Dist. LEXIS 67118, at \*18-19 ("it is not

---

contained GMOs.    But here, Plaintiff has identified the Products she purchased as well as the products that contain soy.  Compl. ¶¶ 15, 41.

unreasonable, as a matter of law, for a consumer to believe that non-organic foods labeled as 'All Natural' do not possess GMOs."); *Parker*, 2013 U.S. Dist. LEXIS 120374, at * 19 (holding that the court could not determine as a matter of law that no reasonable consumer could interpret a "natural" representation to mean GMO-free).

### C.  The Complaint Sufficiently Pleads a Claims for Breach of Express Warranty

Defendant argues that Plaintiff has not sufficiently pled the elements of a claim for breach of express warranty.  Pret first contends that Plaintiff's breach of warranty claim is premised on an unreasonable interpretation of its "natural" labeling and advertising.  Def. Mem. at 13-14. Defendant's argument for dismissal of breach of warranty is thus based on the same erroneous argument above that no reasonable consumer likely would be misled, and, for the reasons set forh above should be rejected by the Court. Courts within the Second Circuit have repeatedly held that "natural" labeling on food products "can constitute an actionable warranty under New York law." *See e.g.*, *Ault*, 2014 U.S. Dist. LEXIS 67118, at *20 ("All Natural" labeling of Crisco Oil was "an actionable warranty"); *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *85 (E.D.N.Y. Aug. 29, 2013) (potato chip products labeled "All Natural"); *see also Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 U.S. Dist. LEXIS 108165, at *7 (E.D.N.Y. Aug. 17, 2015) (personal care products labeled "Suave Naturals"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482-83 (S.D.N.Y. 2014) (personal care products labeled "Active Naturals").

Pret also argues the notice requirement is unmet. Def. Mem. 14-16.  But the notice requirements for breach of warranty under New York law are lenient and the notice "need only 'alert [the prospective defendant] that the transaction [was] troublesome.'" *Amerol Corp. v. Am. Chemie-Pharma, Inc*., No. CV 04-0940 (JO), 2006 U.S. Dist. LEXIS 98037, at * 19 (E.D.N.Y. Mar. 17, 2006) (quoting *Cliffstar Corp. v. Elmar Indus., Inc*., 254 A.D.2d 723, 678 N.Y.S.2d 222,

222 (App. Div. 1998).   Accordingly, the complaint filed by Plaintiff's counsel filed a Complaint

against Pret on March 19, 2019 (*Skylar Cunningham v. Pret A Manger, Ltd. and JAB*

*Holding Company* (1:19-cv-02322) alleging, on behalf of a nationwide class of consumers, inter

alia, breach of express warranty predicated on the same facts alleged herein, as well as the

complaint itself and the subsequent amendment Pret with all the information it needed to remedy

the breach and was more than sufficient under New York law to provide Defendants with notice.

are adequate notice of Defendant's breach of express warranties.

In *Panda Capital Corp. v. Kopo International, Inc.*, 662 N.Y.S.2d 584 (App. Div. 1997),

the defendant agreed to deliver steel products to the plaintiff, who brought suit alleging various

breaches. The defendant argued it had not received timely notice of the alleged breaches, as

required by UCC § 2-607. To this, the Second Department stated:

> This argument overlooks the fact that the complaint and subsequent amended
> complaint in this action themselves constituted such notice, and that the plaintiff
> had repeatedly made its objections to [the defendant's] pattern of deficient
> performance known prior to the shipments reflected in the invoices. Under these
> circumstances, it is at the very least an issue of fact as to whether reasonably timely
> notice of breach was given.

*Id.* at 586–87 (citations omitted).  *See also Tomasino,* 44 F. Supp. 3d at 261 n.6. ("New York cases

applying N.Y. U.C.C. § 2-607(3) suggest that a plaintiff's pleadings may constitute reasonable

notice in certain cases.").

Moreover, the Court cannot hold as a matter of law that any delay between the time that

Plaintiff purchased the Products and when Pret was notified of its breach of warranty was

unreasonable.   Whether a timeframe is reasonable "depends on the nature, purpose, and

circumstances of the action." N.Y. U.C.C. Law § 1-205(a). "[T]he rule of requiring notification is

designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."

N.Y. U.C.C. Law § 2-607, cmt. 4. Moreover, the sufficiency and timeliness of a delay is normally

a question of fact for the jury.  *See Paulino*, 2015 U.S. Dist. LEXIS 108165, at *5 (citing *Mendelson v. Gen. Motors Corp*., 105 Misc. 2d 346, 432 N.Y.S.2d 132, 136 (N.Y. Sup. Ct. Nassau Co. 1980), aff'd, 81 A.D.2d 831, 441 N.Y.S.2d 410 (2d Dep't 1981); *Hubbard v. Gen. Motors Corp*., No. 95-CV-4362, 1996 U.S. Dist. LEXIS 6974, at *13 (S.D.N.Y. May 22, 1996).The Amended Complaint alleges that Plaintiff purchased the Products at various times during the class period, and that Defendant was notified of its breach through the filing of the *Cunningham* Action on March 19, 2019.  Compl. ¶¶ 40, 81.  This stands in contrast to *Tyman v. Pfizer, Inc*., No. 16-CV-06941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879, at *60 (S.D.N.Y. Dec. 27, 2017) where the complaint was completely silent as to when the product at issues was purchased, or *In Re Frito-Lay* where the complaint did not allege when notice was given to the defendant.  2013 U.S. Dist. LEXIS 123824, at *27.  Accordingly, Plaintiff's pre-suit notice of Defendants' breach was not deficient in any way and his breach of express warranty claim should not be dismissed.

**D. The Amended Complaint Alleges Violation of The Magnuson-Moss Warranty Act**

Pret argues Plaintiff has not stated a claim for violation of the MMWA because the term "natural" on a food product label is not a "written warranty" under the MMWA. Def. Mem. 16–1820; *see* 15 U.S.C.A. § 2301(6)(A). But because Plaintiff has stated a claim for breach of New York warrant*y See supra* § I.C.1, she has also pled a violation of the MMWA by stating a claim for breach of express warranty under New York law. The MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *55; *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs implied warranty claims under the MMWA); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (holding that a breach of express warranty under the MMWA is coextensive with

New York State law);  *Kaatz v. Hyland's Inc.*, No. 16-CV-237, 2016 U.S. Dist. LEXIS 87348, at *11 n.5 (S.D.N.Y. July 6, 2016) ("Although the MMWA is a federal statute, liability under it is based on state warranty laws.").  Since Plaintiff's representations constitute an express warranty under New York law, they also constitute one under the MMWA.  *See Sitt*, 2016 U.S. Dist. LEXIS 131564, *57 (holding that because  defendant's "natural" representation constituted an express warranty under New York law, it was also a warranty under the MMWA); *Suarez*, 2019 U.S. Dist. LEXIS 34634, *22 ("because plaintiff's underlying damages claims survive dismissal, plaintiff's MMWA claim does, as well."); *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (denying a motion to dismiss MMWA because the complaint pled a New York breach of express warranty claim).

To the extent that Defendant asserts that Plaintiff cannot bring her MMWA claims as a class action because she has not identified 100 named plaintiffs, the Court should reject that argument as well.  *See* Def. Mem. at 19, fn. 10.  Pret ignores that Plaintiff has not invoked subject matter jurisdiction on the basis of the MMWA and, as a result, § 2310(d)(3) does not apply. Instead, the Court may exercise supplemental jurisdiction over Plaintiff's MMWA claim pursuant to 28 U.S.C. § 1367(a) because Plaintiff's MMWA claim stems from the same common nucleus of operative fact as Plaintiff's other claims, over which the Court has jurisdiction pursuant to CAFA. *See Dayan v. Swiss-Am. Prod., Inc.*, No. 15-cv-06895-DLI-VMS, 2017 U.S. Dist. LEXIS 1121, at *32 (E.D.N.Y. Jan. 3, 2017) ("In short, consistent with the Courts of Appeals and several district courts that have addressed the issue, the Court believes that where, as here, the jurisdictional prerequisites of CAFA are satisfied, the Court may exercise subject-matter jurisdiction over a claim under the MMWA although the jurisdictional prerequisites of that statute may not be met.").

13

### D.  The Amended Complaint Adequately Alleges an Alternative Claim for Unjust Enrichment

Pret argues the Court should dismiss Plaintiff's unjust enrichment claim because it duplicates her claims for false advertising and breach of express warranty. Def. Mem. 22–23. But, as the court recently explained in *Warner v. StarKist Co.*:

> [Defendant] argues that [plaintiff's] unjust enrichment claim must be dismissed because it is duplicative of his GBL claims. . . . [Defendant] fails to persuade the court that this claim should be dismissed at this stage. The elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350. . . . Thus, "a 'reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [plaintiff's other] claims sounding in law.'"

*Warner v. StarKist Co.*, No. 1:18-vb-00406-GLS-ATB, 2019 U.S. Dist. LEXIS 48587, at *6-7 (N.D.N.Y. Mar. 25, 2019) (citations omitted).

Furthermore, dismissal is inappropriate at this stage because "[t]he Federal Rules of Civil Procedure explicitly permit Plaintiff to assert claims in the alternative," regardless of consistency. *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); Fed. R. Civ. P. 8(d)(2); Fed. R. Civ. P. 8(d)(3); *see Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).

Pret also argues Plaintiff has not adequately alleged she did not receive the benefit of her bargain when she purchased the Products. Def. Mem. 20. However, Plaintiff alleges she bargained and paid for "natural" Products, but the Products she received were not, in fact, natural. Compl. ¶¶ 6–15, 32–36, 40-41.

### E.  Pret's Attempt to Strike Plaintiff's Warranty Class Claims is Premature

Finally, Defendant asks the Court to strike Plaintiff's express class claims pursuant to Rule 12(f).  Def. Mem. at 20. However, Defendant cannot meet the extraordinarily high burden associated with seeking to strike class allegations at the pleading stage.  When a defendant makes

14

a motion to strike class allegations before class discovery has been concluded (let alone started), the defendant bears the burden to "demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y 2015) (citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)).

Here, Defendant has not merely moved to dismiss the nationwide class allegations before discovery; it has moved to dismiss the nationwide class allegations before it has even answered the Amended Complaint.  There are numerous decisions in this Circuit noting that motions to strike are disfavored, and should be granted "only when there is a strong reason for doing so." *See, e.g., In re Tronox Sec. Litig.*, No. 09 Civ. 6220, 2010 U.S. Dist. LEXIS 67664, at *13 (S.D.N.Y. June 28, 2010).  Moreover, "[a] motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Chenensky v. NY Life Ins. Co.*, 2011 WL 1795305, at *4 (S.D.N.Y Apr. 27, 2011) (quoting *Ironforge.com v. Paychex, Inc.*, 747 F.Supp.2d 384, 404 (W.D.N.Y 2010)).  Thus, unless a motion to strike class allegations "addresses issues separate and apart from the issues that will be decided on a class certification motion," the motion should be denied as premature. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d 113, 117 (SDNY 2012).  Here, Defendant's request to limit the class is premature and should be decided within the context of a class certification motion.

Defendant seeks to strike Plaintiff's warranty claims on the grounds other courts have refused to certify express warranty claims because those claims require proof of notice and actual reliance.  Def. Mem at 20.  Notably, none of the cases cited by Defendant were decided on a motion

to strike prior to the completion of discovery.  Courts have been exceedingly reluctant to strike class warranty claims at the early stages of a case, even if such claims may present difficulties for class certification.  *See e.g. Lewand v. Mazda Motor of Am., Inc*., SACV 17-00620 JVS (JCGx), 2017 U.S. Dist. LEXIS 219127, *16 (C.D. Cal. Nov. 8, 2017) (declining to strike nationwide warranty claims because it was not "'the rare case where the pleadings indicate that the class requirements cannot possibly be met.'") (quoting *Kazemi v. Payless Shoesource Inc*., No.C 09-5142 MHP, 2010 U.S. Dist. LEXIS 27666, at *5 (N.D. Cal. Mar. 16, 2010)).

## II.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss and strike the warranty class claims in its entirety. If the Court grants any part of Defendant's motion, Plaintiff respectfully requests leave to amend. FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Date: November 6, 2020                          Respectfully submitted,

                                                **THE SULTZER LAW GROUP P.C.**

                        By:  *Jason P. Sultzer*
                              Jason P. Sultzer
                              *sultzerj@thesultzerlawgroup.com*
                              Jeremy Francis
                              *francisj@thesultzerlawgroup.com*
                              85 Civic Center Plaza, Suite 200
                              Poughkeepsie, New York 12601
                              Telephone: (845) 483-7100
                              Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*