UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JESSICA BARTON, *individually and on behalf of all*   :
*others similarly situated,*   :
  :
                  Plaintiff,   :
  :
      -against-   :
  :
PRET A MANGER (USA) LIMITED,   :
  :
              Defendant.   :
------------------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:  4/27/2021 |

1:20-cv-04815 GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Jessica Barton values natural products, believing that they are safer and healthier than products that contain synthetic ingredients.  Ms. Barton is even willing to pay more for products that she believes contain exclusively natural ingredients.  For that reason, Ms. Barton bought food from Defendant Pret A Manger ("Pret"), which touted its "natural food" and products made with "natural ingredients."  Ms. Barton believed that Pret's offerings were free from genetically modified organisms ("GMOs") and other synthetic ingredients.  But they are not.  Ms. Barton alleges that she was deceived by Pret's logo and its products' packaging—notwithstanding the fact that the ingredient labels on the back of the products accurately described the products' contents.  She brought this lawsuit as a result.

Because Plaintiff has plausibly alleged that the references to "natural ingredients" and "natural food" on the products' packaging are likely to lead a reasonable consumer to wrongly believe that these products contain exclusively natural ingredients and that they are free of GMOs, Plaintiff's consumer protection claims under Sections 349 and 350 of the New York General Business Law are adequately pleaded.  However, Plaintiff's auxiliary tort and warranty claims fail.  As a result, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

I.      **BACKGROUND**

        **a.  Facts**

In today's society, "[c]onsumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products."  Am. Compl., Dkt. No. 13 (the "FAC"), ¶ 5.  "Indeed, consumers are willing to pay, and have paid, a premium for products branded 'natural' over products that contain synthetic ingredients."  *Id.*  Plaintiff is one of those consumers.  Plaintiff alleges that she is one of many who were misled by Pret's offering of "natural food" and products made with "natural ingredients."  Pret's logo, "which appeared throughout retail outlets and was prevalently featured on the company's advertisements, and, including but not limited to, signage, employee uniforms, cups, napkins, product packaging, and takeaway bags," contained the representation that it sells "Natural Food."  *Id.* ¶ 6.  Similarly, prominent signage in Pret's retail outlets stated, "Freshly prepared, good, natural food," and the labels for many of Pret's products stated that they were made with "natural ingredients."  *Id.* ¶¶ 7, 8.

At different times during the Class Period,[1] Plaintiff purchased various food items that she believed were "natural," including the Pret Salt & Vinegar Chips, Pret BBQ Chips, Pure Pret Ginger Beer, the Pret Chicken & Avocado Sandwich, the Pret Turkey & Pesto Sandwich, and the Pret Bang Chicken Wrap from different Pret stores in New York City.  *Id.* ¶ 40.  Plaintiff bought those items with the belief that they did not contain synthetic ingredients, having relied on Pret's alleged misrepresentations that the products were "natural."  Plaintiff alleges that she paid a premium price for the Pret's products compared to similar products that did not purport to be "natural."  *Id.* ¶ 3.  Plaintiff alleges that she was misled by these representations because Pret did

---

[1] Plaintiff fails to specify the Class Period.  She merely alleges that the class period is the "applicable statute of limitations period."  FAC ¶ 4.

not actually deliver "natural" products.

To understand these allegations, one must examine Pret's logo and the packaging for the products.  Because a picture is worth a thousand words, images of the logo and packaging appear below.







*Id.* ¶ 6.



*Id.* ¶ 7.



*Id.* ¶ 8.  Plaintiff alleges that similar representations regarding the "natural" content of Pret's food

can be found on twenty–six products.[2]

Plaintiff alleges that, notwithstanding Pret's representations, its products were not natural.

Instead, they contained GMOs and numerous other synthetic ingredients.  *Id.* ¶ 9.  Plaintiff points to

a plethora of synthetic ingredients, which she alleges that one would not expect to find in products

advertised as "natural," namely, maltodextrin, citric acid, malic acid, lactic acid, diacetyl tartaric acid

---

[2]According to Plaintiff, the products allegedly deceptively advertised and labeled include the following:  "Pret Salt & Vinegar Chips, Pret BBQ Chips, Pure Pret Ginger Beer, Pret Cheddar and Tomato Sandwich, Pret Balsamic Chicken & Avocado Sandwich, Pret California Club Sandwich, Pret Chicken & Bacon Sandwich, Pret Egg Salad & Arugula Sandwich, Pret Tuna Salad sandwich, Pret Turkey & Pesto Sandwich, Pret Chicken Caesar & Bacon on Artisan Sandwich, Pret Ham & Cheese Sandwich, Pret Bang Chicken Wrap, Pret Chicken Bacon & Ranch Wrap, Pret Chef's Salad, Pret Chicken Caesar Salad, Pret's Cuban Sandwich, Pret's BBQ Pulled Pork Hot Wrap, Pret's ham & Cheddar Grilled Cheese, Pret's Blueberry Muffin, Pret's Carrot Cake Cookie, Pret's Chocolate Brownie Cookie, Pret's Chocolate Chunk Cookie, Pret's Chocolate Hazelnut Croissant, Pret's Energy Bagel, and Pret's Pain Au Chocolate [sic]."  FAC at 2 n.1.

esters of mono- and diglycerides, mono-and diglycerides of fatty acids, and ascorbic acid.  *Id.* ¶¶ 10, 11.

Furthermore, a majority of the twenty–six products with which Plaintiff takes issue contain soya, which, according to Plaintiff, "is known to be derived from GMOs and/or to be synthetically produced."  *Id.* ¶ 12.  "The term GM foods or GMOs (genetically-modified organisms) commonly refers to crop plants created for human or animal consumption using the latest molecular biology techniques."  *Id.* ¶ 13.  "GMOs are not natural because they grow from seeds that have been modified in a laboratory."  *Id.* ¶ 14.  Plaintiff specifically alleges that the products at issue in this suit "use plants or plant derivatives grown or created from GMOs."  *Id.* ¶ 15.  Because they use GMOs, Plaintiff alleges that the products are not "natural."  *Id.*

Plaintiff points to regulatory guidance to support her position that a reasonable consumer would understand the term "natural" to mean that a product did not contain synthetic substances. In particular, Plaintiff points to a 2013 draft guidance document issued by the United Department of Agriculture (the "USDA") regarding "Classification of Materials as Synthetic or Nonsynthetic (Natural)."  *Id.* ¶ 17.[3]  Plaintiff contends that reasonable consumers simply "do not expect a synthetic chemical with suspected health concerns to be found in a product marketed as 'natural,' which makes [Pret's] 'Natural Food' representation deceptive and misleading."  *Id.* ¶ 19.  She alleges that surveys and market research will demonstrate that the term's use is misleading.  *Id.* ¶ 20.

Plaintiff acknowledges that the products at issue in this case identify on their packaging the synthetic and GMO ingredients of which she complains.  *Id.* ¶ 22.  She alleges that because

---

[3] That guidance provides that a substance "is natural—as opposed to synthetic—if:  (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter."  FAC ¶ 17.

"[d]iscovering that the ingredients are not natural requires a scientific investigation and knowledge of chemistry beyond that of the average consumer," Pret's representation that the products are "natural" is nonetheless misleading.  *Id.*  Plaintiff maintains that "the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front and side-of-the-Products claims, representations, and warranties that the Products are 'Natural.'"  *Id.* ¶ 23.  Plaintiff claims that Defendant knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.  *Id.* ¶ 30.  Had it not been for these alleged misrepresentations, Plaintiff alleges, she would not have been willing to pay the same amount for the products she purchased, and, consequently, would not have been willing to purchase the products at all.  *Id.* ¶ 32.

### b.  Procedural History

Plaintiff initiated this action on June 23, 2020.  Dkt. No. 1.  She filed an amended complaint (the "First Amended Complaint" or the "FAC") on September 4, 2020.  Dkt. No. 13.  In the First Amended Complaint, Plaintiff asserts claims for violations of Sections 349 and 350 of the New York General Business Law (the "GBL"), breach of express warranty, violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and unjust enrichment.  Plaintiff asserts the claims on behalf of herself as well as a putative class of "all consumers who purchased the Products anywhere in the United States during the Class Period."  FAC ¶ 44.

Defendant moved to dismiss the First Amended Complaint in its entirety on October 16, 2020.  Def.'s Notice Mot. to Dismiss, Dkt. No. 21; Mem. Law Supp. Def.'s Mot. to Dismiss ("Def.'s Mem."), Dkt. No. 21-1.  Plaintiff filed her opposition on November 6, 2020.  Mem. Law Opp'n to Def.'s Mot. to Dismiss, Dkt. No. 22 ("Opp'n").  Defendant filed its reply on November 13, 2020.  Mem. Law Further Supp. Def.'s Mot. to Dismiss, Dkt. No. 23 ("Reply").

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556.

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

On a motion to dismiss, a court must generally "limit itself to the facts stated in the

complaint."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006).  But a court may

consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated

in it by reference."  *Lynch*, 952 F.3d at 79 (quoting Fed. R. Civ. P. 10(c)) (other citations omitted).  A

court may also consider a document that is "solely relie[d]" on by the plaintiff and "is integral to the

complaint."  *Id.* (citation omitted).  A document is "integral to the complaint" if the complaint

"relies heavily" on the document's "terms and effect."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230

(2d Cir. 2016) (citation omitted).  A plaintiff must "*rely* on the terms and effect of the document in

drafting the complaint; mere notice or possession is not enough."  *Nicosia*, 834 F.3d at 231 (quoting

*Glob. Network Commc'ns, Inc. v. City of New York.*, 458 F.3d 150, 156 (2d Cir. 2006)).  A court can also

consider "matters of which judicial notice may be taken."  *Lopez v. Nike, Inc.*, No. 20-CV-905 (PGG)

(JLC), 2021 WL 128574, at *3 (S.D.N.Y. Jan. 14, 2021) (citation omitted).

### III.   ANALYSIS

#### a.  Plaintiff Has Adequately Pleaded a Violation of Sections 349 and 350 of the New York General Business Law

Plaintiff has adequately pleaded a violation of Sections 349 and 350 of the GBL because it is

plausible that a reasonable consumer would interpret the references to "natural food" and "natural

ingredients" on the labeling and advertising of Pret's products to mean that the products do not

include synthetic ingredients or GMOs.  GBL Section 349 prohibits "[d]eceptive acts or practices in

the conduct of any business, trade or commerce or in the furnishing of any service," while GBL

Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law §§ 349, 350. To successfully assert a claim under either section of the statute, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). "Claims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) . . . ." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

"To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). The test applies an objective standard. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)). "Given that the reasonable consumer inquiry is, in most instances, a factual one, a party seeking to dismiss a false labeling claim must 'extinguish . . . the possibility' that a reasonable consumer could be misled into believing the Products contained no synthetic materials." *Grossman v. Simply Nourish Pet Food Co.*, No. 20-CV-1603 (KAM)(ST), 2021 WL 293774, at *8 (E.D.N.Y Jan. 27, 2021) (quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013)). "In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. We therefore consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636 (internal quotation marks, citations, and alteration omitted).

"[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742. At the same time, disclosures on the back of a package, such as an ingredient label, or a panel with other facts about the nutritional content of a product, do not necessarily render a plaintiff's allegations of deception implausible. *See Mantikas*, 910 F.3d at 636–37. Indeed, the Second Circuit has held the following:

> Reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging. We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.

*Id.* at 637 (internal quotation marks, citations, and alterations omitted).

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) and *Marine Midland Bank*, 85 N.Y.2d at 26)). However, "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran*, 450 F. Supp. 3d at 346; *see also Newton v. Kraft Heinz Foods Co.*, No. 16 CV 04578 (RJD)(RLM), 2018 WL 11235517, at *3 (E.D.N.Y. Dec. 18, 2018) ("As a general matter, the reasonable consumer test is a fact-based inquiry that cannot be resolved in a Rule 12(b)(6) motion."); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("[U]sually [the reasonable consumer] determination is a question of fact." (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014)))). Still, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lugones v. Pete & Gerry's Organic, LLC*, 440

F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order)).

It is important to remember that "at least in some cases, '[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826 (MKB), 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) (alteration in original) (quoting *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world")). And "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Lynch*, 952 F.3d at 75 (quoting *Twombly*, 550 U.S. at 556). "However, 'in rare situation[s],' courts may resolve the issue at the motion-to-dismiss stage, where the pleading does not plausibly allege that a reasonable consumer would be deceived." *Podpeskar v. Dannon Co.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).

In the context of this motion, the Court cannot conclude as a matter of law that the use of the word "natural" on the advertising and packaging of Pret's products cannot reasonably be understood to represent that the product does not contain synthetic products or GMOs. Plaintiff has plausibly alleged that Pret's use of the word "natural" is materially misleading in two ways. First, because, as Plaintiff argues, a reasonable consumer could conclude that the products are free from GMOs, when, in fact they use plants or plant derivatives created from GMOs. And second, because a reasonable consumer could conclude that the products contain exclusively natural ingredients, when, in fact, the products also contain synthetic ingredients.

### i. Pret's "Natural" Label Can Reasonably Be Understood to Exclude Synthetic Substances and GMOs.

Plaintiff has adequately pleaded that a reasonable consumer is likely to be misled by Pret's representation that its food is "natural," when it in fact contains synthetic substances and GMOs. The complaint alleges that consumers, including Plaintiff, value "natural" products, in part because they believe that they are "safer and healthier than alternative products that are not represented as natural." FAC ¶ 5. Plaintiff alleges that she "does not consider a product containing GMOs or other synthetic ingredients to be 'natural.'" *Id.* ¶ 40. The complaint alleges facts that support the position that she is not idiosyncratic in that belief. "In 2018, Defendant was censured by an advertising watchdog for advertising its Products as natural despite containing these ingredients, which, as explained below, are synthetic and not natural." *Id.* ¶ 11. Plaintiff alleges that survey and market research, including anticipated expert testimony "will demonstrate that the term 'natural' is misleading to a reasonable consumer because the reasonable consumer believes that the term 'natural,' when used to describe goods such as the Products, means that the goods are free of synthetic ingredients and/or GMOs." *Id.* ¶ 20.

The plausibility of Plaintiff's allegations is bolstered by her allegations regarding the USDA guidance described above. Again, the guidance distinguishes between the classification of materials as either synthetic or "Nonsynthetic (Natural)." *Id.* ¶ 17. The guidance states that a substance is "natural" if

> (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

*Id.* These allegations support Plaintiff's contention that a "natural" product can be reasonably understood to be one that excludes synthetics and GMOs.[4]

The allegations in the complaint are sufficient to allege plausibly that a reasonable consumer would likely be confused by Pret's advertisements and representations. As in the many other cases in this Circuit that have considered the question, what a reasonable consumer would ultimately understand the term to mean is a question of fact, which cannot be resolved in the context of this motion to dismiss. *See, e.g.*, *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *6–7 (S.D.N.Y. Mar. 30, 2018) ("[T]he Court cannot find that it is unreasonable as a matter of law for a person to expect that a [cosmetic] product labeled 'natural' contain[s] only non-synthetic ingredients . . . . [A] reasonable consumer acting reasonably very well could be misled because they could conclude that the 'natural' label on the cosmetics means that they are made with all natural products."); *Suarez v. Cal. Nat. Living, Inc.*, No. 17 CV 9847 (VB), 2019 WL 1046662, at *8 (S.D.N.Y. Mar. 5, 2019) (finding that "defendants' descriptions of the products as 'natural' or 'naturally perfect for the whole family' would deceive a reasonable consumer . . . [who] could plausibly interpret those descriptions as suggesting that the products contain only natural ingredients"); *Grossman*, 2021 WL 293774, at *9 (finding that "a reasonable consumer could plausibly construe the Products' labeling to suggest that the 'added vitamins and minerals,' like the rest of the 'natural ingredients,' are also 'natural'"); *Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2014 WL

---

[4] Some courts have also found guidance in statements by the United States Food and Drug Administration (the "FDA"). The FDA has acknowledged that the use of the term "natural" is "confusing to consumers." *In re Frito-Lay*, 2013 WL 4647512, at *15; *see also Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409(PAC), 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) ("[T]he FDA has not developed a definition for the term 'natural' because of the 'complexities' of the factual inquiries involved."). The current FDA policy is informal and nonbinding and interprets "natural" as meaning "nothing artificial or synthetic . . . is included in, or has been added to, the product that would not normally be expected to be there." *See* Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991). The FDA also stated that "'natural' claims are . . . misleading to consumers and frequently breach the public's legitimate expectations about their meaning." *Id.* The FDA further acknowledged that there is a "general lack of consumer understanding and scientific agreement about the meaning of the term." *Id.* "The inconsistent definitions and descriptions by the FDA and USDA suggest the conclusion that the definition of "natural" is ambiguous." *Mason v. Reed's Inc.*, No. 18-cv-10826 (JGK), 2021 WL 293326, at *5 (S.D.N.Y. Jan. 28, 2021).

1998235, at *6 (S.D.N.Y. May 15, 2014) ("Ultimately, the question [of whether Crisco Oil's "All Natural" label is misleading] is one of reasonability, which cannot be resolved on Defendant's motion to dismiss."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients."); *Goldemberg*, 8 F. Supp. 3d at 479–80 (S.D.N.Y. 2014) ("[T]he Court cannot hold as a matter of law that the product labels [Active Naturals] are not misleading to a reasonable consumer.").[5]

Several of the arguments presented to the Court in Pret's motion to dismiss do not stand up to close examination. At the outset, Defendant misstates the holding of the Second Circuit in *Axon v. Florida's Natural Growers, Inc*, 813 F. App'x 701 (2d Cir. 2020) (summary order). Defendant relies on that case to support a contention that as a matter of law no reasonable consumer can be deceived by Defendant's use of the term "natural." Defendant argues that "[a]s recognized by the Second Circuit, simply referring to products as 'natural' cannot reasonably be construed by consumers to indicate 'the absolute absence of' synthetic substances." Def.'s Mem. at 1–2 (citing *Axon*, 813 F. App'x at 705); *see also* Reply at 1. But that is not what the Circuit held—Defendant has taken liberties by replacing the words from the Circuit's actual decision with words that will help its case, and, what's more, has omitted any mention of the portions of the Circuit's decision that run directly contrary to its position.

What the Circuit actually held in its non-precedential decision in *Axon* was the following:

> Second, the district court was correct to distinguish the cases that Axon cited because those cases involved different representations, such as "pure" or "100% natural," and allegations that the defendant *added* unnatural ingredients to its products. Unlike "natural," the words "pure" and "100% natural" indicate the absolute absence of contaminants. *See, e.g., Pure*, Merriam-Webster Dictionary, http://merriam-

---

[5] In its opening brief, Defendant points to two cases from outside of this Circuit—*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013), and *In re Gen. Mills Glyphosate Litig.*, No. 16-CV-2869, 2017 WL 2983877 (D. Minn. July 12, 2017). Def.'s Mem. at 9. But Defendant has failed to even acknowledge the existence of the substantial volume of in-Circuit cases that run contrary to its position.

> webster.com/dictionary/pure (defining "pure" as "free from dust, dirt, or taint").  And Axon makes no allegation that Defendant adds glyphosate as an artificial/synthetic ingredient to its products.

*Axon*, 813 F. App'x at 705 (citation omitted).  From this quote, Defendant has selectively snipped the words "the absolute absence of"—which precede "contaminants" in the opinion—and placed them before the words "synthetic substances."

This is misleading.  Why?  Because there is a distinction between contaminants and synthetic substances included in a product as an ingredient.  In *Axon*, the Second Circuit explicitly differentiated between contaminants and intentionally added ingredients.  *Id.* ("First, we agree with the district court that the presence of glyphosate as a contaminant in Defendant's products, *rather than an intentionally-added ingredient*, bolsters the conclusion that a reasonable consumer, viewing the brand name 'Florida Natural,' would not make assumptions regarding the presence or absence of trace amounts of glyphosate." (emphasis added)).  The last sentence from the block quote above makes the significance of the absence of allegations regarding the addition of synthetics to the product at issue in that case clear—the Circuit noted that there was no allegation regarding the intentional addition of synthetic ingredients.  *Id.* ("And Axon makes no allegation that Defendant adds glyphosate as an artificial/synthetic ingredient to its products.").[6]

Evaluation of representations in this context requires an evaluation of the specific packaging at issue.  It is clear that the product packaging at issue in *Axon* was very different than the labeling at issue here.  The district court in *Axon* "noted that the term 'natural' occurred only within the brand name 'Florida's Natural' and nowhere else on the packaging.  The packaging does not describe the

---

[6] *Axon* may be more analogous to a case such as *Podpeskar*, in which the court dismissed a case where the plaintiff was allegedly deceived by yogurt labels containing the word "natural," "where the cows that produced the milk that produced the yogurt, may, at some point, have eaten feed made from corn that was genetically modified, or been raised using hormones and certain milk production methods."  2017 WL 6001845, at *1.  Here, in contrast, Plaintiff alleges that several ingredients used directly in Defendant's products are unnatural; her claim is not that, several steps back in the food chain, there may have been herbicides sprayed on weeds or GMO feed ingested by cows.

orange juice as 'natural' on a stand-alone label or as '100% natural.'"  *Id.*; *accord Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 184 (E.D.N.Y. 2018)).  Here, by contrast, the labeling for Pret's food did describe the product as "natural" on a stand-alone basis.  It simply is not a fair reading of *Axon* to present the case as if it had held that as a matter of law, no use of the term "natural" can be understood by a reasonable consumer to signify the absence of synthetic ingredients.  The Court is concerned that Defendant's selective citation from *Axon* is misleading.[7]

Defendant also predicates a line of attack in its motion to dismiss on facts that are not pleaded in the complaint or otherwise before the Court.  A section heading in Defendant's motion captures its argument well:  "No Reasonable Consumer Would Have Interpreted 'Natural' to Mean 100% Free of 'Synthetic' Ingredients, *Even if Those Ingredients Are Identical to Molecules Found in Nature.*"  Def.'s Mem. at 7 (emphasis added).  Defendant argues that no reasonable consumer could be misled since the synthetic products are chemically identical to natural products.  But the factual predicate for Defendant's argument—that all of the synthetic products alleged in the complaint are chemically identical to natural products—is not to be found in the complaint.  Instead, it is ported in through Defendant's memorandum of law, which informs the Court about the factual basis for the Court to conclude that the "'nonsynthetic classification would apply with equal force to other challenged ingredients, including malic acid and lactic acid."  Def.'s Mem. at 8–9.  Because this argument asks

---

[7] Defendant's citation to *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019) is similarly misleading.  Defendant cites to *Parks* in further support of the following assertion, which it claims to be supported by the Circuit's summary decision in *Axon*:  "Put simply, Plaintiff cannot 'plausibly allege that a significant portion of the general consuming public' would share this extremist interpretation of the term 'natural.'"  Def.'s Mem. at 8.  Defendant presents the following quotation from *Parks* in support of this statement:  "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule."  *Parks*, 377 F. Supp. 3d at 248.  What is misleading about Defendant's citation to *Parks* is that *Parks*, like *Axon*, is a case about the presence of glyphosate—a herbicide—as a contaminant in the products at issue.  It is not a case about synthetic ingredients intentionally added to food products and labelled as natural.  Judge Stanton's decision in *Park*, like *Axon*, acknowledges that such cases—like this one—are distinguishable:  "Parks asserts that the Products contain trace amounts of glyphosate, but *not* that the Products are composed of unnatural ingredients."  *Id.* at 247 (emphasis added).  *Parks* is not on point, and does not provide support for Defendant's argument.  Separately, the Court observes that the statement quoted by Defendant is not part of the holding of *Parks*.  It is a quote from *In re General Mills*, 2017 WL 2983877, at *5, a District of Minnesota case that Judge Stanton included in a string cite.  Defendant uses its citation to *Parks* as a Trojan horse to present yet another citation to this favored out-of-Circuit case as if it were part of an in-Circuit decision.

the Court to consider facts that are not pleaded in the complaint or otherwise cognizable by the

Court in the context of a motion to dismiss, it has no merit.[8]

Defendant invites the Court to disregard another fundamental principal by asking the Court

to discredit Plaintiff's allegations regarding the GMO content of Defendant's products in the

absence of evidence of testing.  As described above, Plaintiff specifically alleges that Defendant's

products at issue in this case "use plants or plant derivatives grown or created from GMOs."  FAC

¶ 15.  This is a fact that the Court is required to accept as true in the context of this motion to

dismiss.  Defendant argues that this is insufficient—that, instead, for the Court to credit Plaintiff's

allegations that the products contain GMOs, she must plead the existence of scientific testing that

demonstrates that the products contain GMOs.  Defendant argues, for example, that "it is

particularly significant that (i) Plaintiff fails to allege any support for her blanket assertion that the

soya included in certain Products was actually genetically modified, much less that (ii) testing had

identified 'detectable genetic material' in any Products."  Def.'s Mem. at 12; *see also id.* at 6

("[Plaintiff] fails to allege that she has verified her claim that the soya in the Products was grown

using GMO seeds . . . ."); *id.* at 10 ("Plaintiff does not allege any basis, other than speculation, to

suggest that the soya in Pret products was derived from GMO seeds.").  Of course, Defendant

points to no case law that supports its extraordinary argument that the Court should not accept as

true the pleaded facts unless they are supported by scientific studies.  The complaint expressly states

---

[8] Moreover, the Court is not required to find whether Defendant's products are "natural" within any given definition. *See Petrosino*, 2018 WL 1614349, at *7; *Grossman*, 2021 WL 293774, at *9.

> General Business Law §§ 349 and 350 employs an objective standard under which a fact finder must find if the 'natural' label, is misleading to a reasonable consumer acting reasonably.  Plaintiff need not establish whether the product is not 'natural' but rather, if a reasonable consumer acting reasonably would be misled.

*Petrosino*, 2018 WL 1614349, at *7 (citations omitted); *see also Ault*, 2014 WL 1998235, at *5 ("[T]his case is far less about science than it is about whether a label is misleading.  The issue is whether the use of the phrase 'All Natural' was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (citations omitted)).

that Defendant's products contain GMOs—the Court cannot discredit Plaintiff's allegations in the context of a motion to dismiss. Defendant is inviting the Court to err.

Defendant cannot point to a case that directly supports its position that the Court should discredit facts expressly pleaded in the complaint if they are not also supported by scientific evidence. Instead, it supports this argument with citations to two cases, which, in candor, do not stand for the proposition for which they are presented. The first is *In re KIND LLC "Healthy & All Natural" Litigation*, 209 F. Supp. 3d 689 (S.D.N.Y. 2016). In that case, the plaintiffs did allege that testing had detected the presence of GMOs in at least some of the defendant's products. *In re KIND LLC*, 209 F. Supp. 3d at 697. Contrary to Defendant's suggestion, however, the court did not hold that such an allegation was required to adequately plead the plaintiffs' claim. The court granted the defendant's motion to dismiss because the plaintiffs had failed "to specify which products included GMOs" and because the "[p]laintiffs' allegations that 'approximately 90% of the canola, 89% of the corn, and 94% of the soybeans grown in the United States are genetically modified' are insufficient without being tied to the KIND products purchased by [the p]laintiffs." *Id.* at 697–98. Again, this deficiency is not an issue here, since Plaintiff has expressly pleaded that all of the relevant products contain GMOs.

Defendant's citation to *Forsher v. J.M. Smucker Co.*, No. 5:19CV00194, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020), does not support Defendant's argument for the same reason. Defendant again rests its argument on selective quotation from the case—describing the relevant holding of the case as "dismissing 'natural' advertising claim because '[p]laintiff fails to provide any facts showing that the Products contain sugar derived from GMO beets.'" Def.'s Mem. at 11 (quoting *Forsher*, 2020 WL 1531160, at *4). But the inadequacy identified by the court in *Forsher* had nothing to do with the lack of testing supporting the facts asserted in the complaint, as Defendant

suggests.  This is clear when the language squibbed by Defendant in its brief is read in context.  The

court in *Forsher* stated:

> First, Plaintiff fails to provide any facts showing that the Products contain sugar
> derived from GMO beets.  Plaintiff merely alleges that half the sugar production in
> the United States came from sugar beets.  But he does not allege that the sugar in the
> Products is even derived from sugar beets, let alone GMO sugar beets.  He also fails
> to show that the sugar contains any bioengineered genetic material.

*Id.* (citation omitted).

The full quote makes clear that in *Forsher*, as in *In re KIND*, the deficiency in the pleadings

was that the plaintiff had not specifically alleged that the products purchased by the plaintiff

contained GMOs.  Instead, the plaintiff asked the court to draw that inference from broad

allegations regarding the prevalence of GMOs in the marketplace.  The court did not discredit an

express allegation that the products contained GMOs because of a lack of testing, a proposition that

Defendant's selective quotation purports to support.  And yet again, the complaint in this case does

not suffer from the deficiency that doomed the plaintiff in *Forsher* because Plaintiff has specifically

alleged that all of the relevant products contain GMOs.

Defendant argues next that "Plaintiff's FAC appears to conflate Pret's claim of 'natural' with

the different, and stronger, claims of '100% natural' or 'all natural.'"  Def.'s Mem. at 7.  However,

the fact that Defendant's products were not labeled as "all natural" or "100% natural" does not

preclude a reasonable juror from concluding that the product is composed of non-synthetic

products.  *See Paulino v. Conopco, Inc.*, No. 14–CV–5145 (JG)(RML), 2015 WL 4895234, at *5

(E.D.N.Y. Aug. 17 2015) ("That the label makes no explicit claim of being 'All Natural,' '100%

natural,' or 'free from synthetics' is beside the point.  A reasonable juror could reach the conclusion

that the label 'Naturals' means that the product is at least mostly comprised of natural ingredients.");

*see also Jou v. Kimberly–Clark Corp.*, No. C–13–03075 (JSC), 2013 WL 6491158, at *6 (N.D. Cal. Dec.

10, 2013) ("Whether one labels a product 'natural' or 'all natural,' the same plausible inference can

be drawn—that the product is natural, meaning it is not made with any non-natural ingredients. While the use of 'all' in 'all natural' may make the inference *even more* plausible than the inference arising from the use of just 'natural,' the use of 'natural' still provides the plausible inference required to defeat a Rule 12(b)(6) motion.").

Moreover, the federal standard for labeling "organic" foods does not preclude a reasonable consumer from understanding that products advertised as "natural" or containing "natural ingredients" do not include synthetic ingredients. Defendant maintains that no reasonable consumer could be deceived by Pret's use of the word "natural," as "federal regulations permit foods labeled as 'organic' to contain all but one of Plaintiff's challenged substances." Def.'s Mem. at 9. However, the Court cannot conclude that, as a matter of law, a reasonable consumer confronted by Defendant's products, cannot reasonably "expect that a product labeled 'natural' or 'all natural' contains only natural ingredients." *Segedie*, 2015 WL 2168374, at *11. "This is true even though foods labeled 'organic' may lawfully contain some synthetic ingredients. There is no rigid hierarchy that makes 'natural' a more permissive label than 'organic' in all respects as a matter of law." *Id.*; *see also Ault*, 2014 WL 1998235, at *6 ("It is not unreasonable, as a matter of law, for a consumer to believe that non-organic foods labeled as 'All Natural' do not possess GMOs."); *In re Frito–Lay*, 2013 WL 4647512, at *15 ("That 'organic' means GMO-free says nothing about whether a reasonable consumer would understand the term "natural" to mean the same."). A jury might ultimately agree with Defendant that "natural" is a more permissive label than "organic," but the Court cannot draw that conclusion as a matter of law.

In sum, based on the allegations in the First Amended Complaint, and drawing all reasonable inferences in Plaintiff's favor, Pret's use of the word "natural" could plausibly mislead a reasonable consumer to believe that the products did not contain synthetic ingredients or GMOs. "The question of whether Defendant's label is *actually* misleading to a reasonable consumer as a

21

matter of law, however, is a question of fact better suited for the jury." *Petrosino*, 2018 WL 1614349, at * 7 (emphasis added) (citing *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016)).

### ii.  Injury is Adequately Pleaded

A party must demonstrate that she suffered an injury in order to state a claim under Sections 349 and 350 of the GBL.  Here, Plaintiff has adequately pleaded that she suffered an injury.  To demonstrate injury under the statute, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302.  One way to do so is to allege that the plaintiff "would not have purchased the product or been willing to pay as much had they known the true facts." *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) ("Plaintiffs have alleged that they would not have purchased the product or been willing to pay as much had they known the true facts, namely that the vanilla taste did not derive 100% from vanilla extract. This is sufficient to meet their burden of alleging injury as a result of alleged misrepresentation." (citation omitted)); *see also Segedie*, 2015 WL 2168374, at *12 ("Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.'"); *Mason v. Reed's Inc.*, 18-cv-10826 (JGK), 2021 WL 293326, at *4–5 (S.D.N.Y. Jan. 28 2021) (finding a cognizable injury under Sections 349 and 350 of the GBL where "the plaintiff allege[d] injury in that she paid a price premium for the product that she thought was all natural and without preservatives").  Here, Plaintiff alleges exactly that.  *See* FAC ¶ 61 ("Plaintiff and the New York Subclass Members . . . paid a premium for products that were— contrary to Defendant's representations— not 'Natural.'  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.").  Therefore, Plaintiff has adequately pleaded that she suffered an injury.

### b. Breach of Express Warranty

Defendant's motion to dismiss Plaintiff's breach of express warranty claim is granted

because Plaintiff has not adequately pleaded that she provided notice of the alleged breach.  Courts

in this Circuit have held that labeling a product as "natural" can constitute an actionable warranty

under New York law.  *See, e.g.*, *Ault*, 2014 WL 1998235, at *6 ("Defendant's labeling of Crisco Oil as

'All Natural' is an actionable warranty."); *In re Frito–Lay*, 2013 WL 4647512, at *27 (determining that

the "All Natural" label on potato chip packaging constituted an express warranty under New York

law).  However, "in order to assert a breach of express warranty claim under New York law, 'a buyer

must provide the seller with timely notice of the alleged breach of warranty.'"  *Lugones*, 440 F. Supp.

3d at 244–45 (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y.

U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have

discovered any breach notify the seller of breach or be barred from any remedy.").

Plaintiff has failed to adequately allege pre-suit notice as required for a breach of express

warranty claim.  Plaintiff's First Amended Complaint states:

> On March 19, 2019, Plaintiff's counsel filed a Complaint against Defendant in the
> Southern District of New York, styled Skylar Cunningham v. Pret A Manger, Ltd. and
> JAB 26 Holding Company (1:19-cv-02322) alleging, on behalf of a nationwide class of
> consumers, inter alia, breach of express warranty predicated on the same facts alleged
> herein.  Defendant was thus placed on notice of its breach and given an opportunity
> to cure its breach, which it refused to do.

FAC ¶ 81.  Plaintiff's First Amended Complaint relies entirely on *Cunningham* for the proposition

that the notice requirement is met.  This argument fails as a matter of law.  The plain language of

N.Y. U.C.C. § 2-607(3)(a) makes clear that "*the buyer* must . . . notify the seller of breach or be barred

from any remedy."  N.Y. U.C.C. § 2-607(3)(a) (emphasis added).  Therefore, Plaintiff *herself* was

required to notify Pret of the alleged breach before bringing the claim herein.  She failed to do so.

"[T]he notice required to preserve [the] right to sue for damages need only 'alert [the

prospective defendant] that the transaction [was] troublesome.'" *Amerol Corp. v. Am. Chemie–Pharma, Inc.*, No. CV 04–0940(JO), 2006 WL 721319, at *8 (E.D.N.Y. Mar. 17, 2006) (third and fourth alterations in original) (quoting *Cliffstar Corp. v. Elmar Indust., Inc.*, 678 N.Y.S.2d 222, 223 (1998)). *Cunningham* placed Defendant on notice of the transactions that were troublesome pertaining to *Cunningham*. *Cunningham* did not put Defendant on notice of Plaintiff's particular transactions, nor could it have, as Plaintiff was not even a party to that action. *See In re Frito-Lay*, 2013 WL 4647512, at *28 (holding that "the notice requirement is met when the seller is somehow apprised of the trouble with the particular product purchased by a particular buyer" (internal quotation marks and citation omitted)); *see also Am. Mfg. Co. v. U.S. Shipping Bd. Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925) (Hand, J.) ("The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach." (emphasis added)); *Niles v. Beverage Mktg. USA, Inc.*, No. 19-CV-1902 (SJF)(ARL), 2020 WL 4587753, at *6 (E.D.N.Y. Apr. 16, 2020) ("Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of [a different] lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy.").

Plaintiff argues in her opposition that the complaint filed in this case satisfies the notice requirement of N.Y. U.C.C. § 2-607(3)(a). This allegation does not appear in the complaint, and a party may not amend its complaint through statements made in its motion papers. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Therefore, the Court need not consider it. Nonetheless, a brief discussion of the issue is warranted here.

Plaintiff's argument rests on the decision of the Second Department in *Panda Capital Corp. v. Kopo International, Inc.*, 662 N.Y.S.2d 584 (2d Dep't 1997). The Court finds Judge Failla's recent analysis of a similar argument to be persuasive.

> Insofar as Plaintiffs believe that *Panda Capital* stands for a broad rule that a filed complaint qualifies as sufficient and timely notice, Plaintiffs are mistaken. All that the *Panda Capital* court found was that where the plaintiff had both filed a complaint and an amended complaint and "had repeatedly made its objections to Kopo's pattern of deficient performance known . . . it [was] at the very least an issue of fact as to whether reasonably timely notice of breach was given." *See* 662 N.Y.S.2d at 586–87. The Court does not believe that such an equivocal statement amounts to a binding rule that Plaintiffs' filed complaint, regardless of its temporal distance from the alleged breach of the warranty, satisfies N.Y. U.C.C. § 2-607(3)(a). This belief is supported by the Court's inability to locate any authority, from either a New York State court or from within this Circuit, that relies on *Panda Capital* for such a broad rule. Indeed, *Mid Island LP v. Hess Corp.*, 983 N.Y.S.2d 204 (Table), 2013 WL 6421281 (Sup. Ct. Dec. 2, 2013), a New York state court case that cites to *Panda Capital*, see *id.* at *4, makes clear that "timely notice is a condition *precedent* to bringing an action for breach of warranty," *id.* (emphasis added). Lacking any more persuasive authority, the Court follows the lead of its sister courts and finds that Plaintiffs must allege some form of timely, pre-litigation notice.

*Lugones*, 440 F. Supp. 3d at 244–45; *see also In re 5-Hour ENERGY Mktg. & Sales Pracs. Litig.*, MDL 13-2438 PSG (PLAx), 2015 WL 12734796, at *9 (C.D. Cal. Jan. 22, 2015) ("Plaintiffs' citation to *Panda Capital Corp.* . . . . to support their argument that the filing of a complaint is sufficient to give pre-litigation notice under New York law is also unpersuasive.").

The holding of *Lugones* is consistent with the view of a leading commentator on the Uniform Commercial Code.

> Mere service of a complaint upon the seller is not sufficient to comply with the notice requirement of U.C.C. § 2-607(3)(a). A finding that service of a complaint is sufficient notice would impede the purposes of the notice requirement, inasmuch as service often occurs months or even years after the buyer is injured. Such a period of time prevents a seller from minimizing his damages.

4 Anderson U.C.C. § 2-607:21 (3d ed.). It is worthy of note that from this Court's research, *Panda Capital* is the only New York State decision that suggests that the filing of a complaint by itself may be sufficient to satisfy the notice requirement, and, as *Lugones* points out, the statement in *Panda Capital* is equivocal. The weight of authority in this Circuit does not view a complaint to be by itself sufficient reasonable notice. *See, e.g.*, *Grossman*, 2021 WL 293774, at *12 ("[T]he Court concludes that plaintiff failed to allege pre-suit notice as required for a breach of express warranty claim.");

*Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018) (holding that the plaintiff failed to state a breach of warranty claim where the complaint made "no allegations and state[d] no facts showing that notice was provided to defendant"); *Budhani v. Monster Energy Co.*, 20-cv-1409 (LJL), 2021 WL 1104988, at *11 (S.D.N.Y. Mar. 22, 2021) (dismissing the plaintiff's breach of express warranty claims for failure to provide timely notice); *Colpitts v. Blue Diamond Growers*, 20 Civ. 2487 (JPC), 2021 WL 981455, at *17 (S.D.N.Y. Mar. 16, 2021) (dismissing the breach of express warranty claim with prejudice because the plaintiff's "failure to satisfy the pre-suit notice requirement [was] fatal"); *Cosgrove v. Or. Chai, Inc.*, 19 Civ. 10686 (KPF), 2021 WL 706227, at *15 (S.D.N.Y. Feb. 21, 2021) (dismissing breach of express warranty claims because the plaintiffs neglected to give any notice); *Niles*, 2020 WL 4587753, at *6 ("Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of [a different] lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy."); *Singleton v. Fifth Gen., Inc.*, No. 5:15-CV-474 (BKS) (TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) ("Plaintiff's express warranties claim must fail because there is no allegation that he made a timely notification to Defendant of any breach of warranty."); *Quinn*, 958 F. Supp. 2d at 544 ("To assert a breach of warranty claim under . . . New York . . . law, a buyer must provide the seller with timely notice of the alleged breach of warranty."); *In re Frito-Lay*, 2013 WL 4647512, at *27 (dismissing the plaintiffs' breach of warranty claims under New York law because the plaintiffs failed to allege that they had provided sufficient notice to the defendants); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (dismissing the plaintiff's breach of warranty claims because the complaint "lack[ed] any allegation that plaintiff notified [the defendant] of the claimed defect").[9]  In any event,

---

[9] In *Patellos v. Hello Products, LLC*, Judge Engelmayer declined to adopt "a hard and fast rule under which a complaint filed promptly after discovery of injury could not supply notice."  19 Civ. 9577 (PAE), 2021 WL 827769, at *7 (S.D.N.Y. Mar. 4, 2021).  The Court does not take issue with that conclusion to the extent that it relies on an analysis of the

because the First Amended Complaint does not contain an allegation that Plaintiff notified

Defendant of a breach of warranty, Defendant's motion to dismiss Plaintiff's breach of express

warranty claim is granted.

### c.  Magnuson-Moss Warranty Act

Defendant's motion to dismiss Plaintiff's claim under the Magnuson-Moss Warranty Act

(the "MMWA") is also granted, because Plaintiff does not plead the existence of a written warranty

within the meaning of the MMWA.  "The MMWA grants relief to a consumer 'who is damaged by

the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'"

*Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (ellipses in original) (quoting 15

U.S.C. § 2310(d)(1)).  Under the MMWA, a "written warranty" is defined in relevant part as follows:

> any written affirmation of fact or written promise made in connection with the sale of
> a consumer product by a supplier to a buyer which relates to the nature of the material
> or workmanship *and affirms or promises that such material or workmanship is defect free or will
> meet a specified level of performance over a specified period of time* . . . .

15 U.S.C. § 2301(6)(A) (emphasis added).  Neither Pret's representation that it sells "Natural Food"

on its logo, nor the references on the packaging of its products to "natural ingredients," suggest that

the food items are defect free or that they will meet a specified level of performance over a specified

period of time; instead, they simply describe the products.  *See Grossman*, 2021 WL 293774, at *12

("[T]he Court agrees with other district courts in this Circuit in finding that the 'natural' label

---

underlying purpose of the statute.  "In some jurisdictions, pre-suit notice is excused altogether because the filing of the complaint is deemed sufficient notice.  Significantly, there is nothing in the Section 2-607(3)(a) which specifically prohibits a civil complaint from serving as notice of the breach."  11 Bus. & Com. Litig. Fed. Cts. § 117:69 (4th ed.).  At the same time, the "majority rule seems to be that the filing of a civil complaint will not operate as sufficient notice under Section 2-607."  *Id.*  The question is whether the equivocal statement in *Panda Capital* is by itself sufficient to place New York in the minority position.  It is worthy of note that *Tomasino v. Estee Lauder Co.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014), to which *Patellos* pointed as "a district court in this Circuit [which] has upheld this form of notice," relied exclusively on *Panda Capital*.  *See Patellos*, 2021 WL 827769, at *7.  *Tomasino* cited to *Panda Capital* in a footnote stating, "New York *cases* applying N.Y. U.C.C. § 2–607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases."  *Tomasino*, 44 F. Supp. 3d at 261 n.6 (emphasis added).  While *Tomasino* states that multiple New York courts have reached this conclusion, no other cases besides *Panda Capital* were cited in support of that proposition.  The Court has not identified a New York state court decision other than *Panda Capital* that has reached that conclusion.

constitutes a product description and does not warrant any specified level of performance or promise that the product to which the label is affixed will be defect free."); *Newton*, 2018 WL 11235517, at *6 ("[L]ooking solely at the language of the MMWA, Plaintiff's suggestion that Defendants' 'natural' or 'all natural' labels could be construed to 'promise' or 'affirm' a 'defect free' sour cream or a sour cream that 'will meet a specified level of performance over a specified period of time' strains virtually any possible interpretation or definition of the term 'natural.'"); *In re Frito-Lay*, 2013 WL 4647512, at *17 (holding that the representation that chips were "all natural" was not a written warranty under MMWA because it did not warrant that the product was free from defect or promise a specified level of performance, but rather was a description of the product).  Therefore, Defendant's motion to dismiss Plaintiff's MMWA claim is granted.

### d. Unjust Enrichment

Plaintiff's unjust enrichment claim is dismissed as duplicative.  "Under New York law, '[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (alteration in original) (quoting *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016)).  "To establish unjust enrichment, the plaintiff must show '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'"  *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020) (quoting *Buonasera*, 208 F. Supp. 3d at 567).  However, "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  "[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020) (quoting *Corsello*, 18 N.Y.3d 777 at

790).

Indeed, courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims.  *See, e.g.*, *Grossman*, 2021 WL 293774, at *13 (holding that "the unjust enrichment claim duplicates the plaintiff's other claims, which arise out (sic) identical facts:  the defendants' alleged misrepresentation on the Product packaging . . . the same allegations as her claims of violations of GBL §§ 349 and 350"); *Parks*, 377 F. Supp. 3d at 248–49 ("Plaintiff's unjust enrichment claim that Defendant was enriched at Plaintiff's expense through payment for the Products duplicates his other claims based on the same alleged misrepresentation that the Products are 'natural,' and is therefore dismissed."); *Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16-CV-8532 (KBF), 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of [plaintiff's] unjust enrichment claim is that (1) she purchased defendants' food items as a result of their material omissions, and (2) defendants[] unjustly retained the revenue from those purchases.  Those allegations are entirely duplicative of [plaintiff's] GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law.").

The allegations in the FAC demonstrate that this count is duplicative of Plaintiff's other claims.  Plaintiff's claim that Defendant was unjustly enriched at Plaintiff's expense as a result of the premium charged for its products duplicates her other claims based on the same alleged misrepresentation that the products are "natural."  It "relies on the same factual allegations and the same theory of liability" as Plaintiff's other theories of recovery.  *Hesse*, 463 F. Supp. 3d at 474 (dismissing unjust enrichment claim as duplicative of other claims alleging defendant's chocolate label was misleading); *see also Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative because the unjust enrichment allegations were "a mere regurgitation of those made with respect to plaintiffs' slack-fill claims under the GBL").  As a result, Plaintiff's unjust enrichment claim is dismissed as duplicative.

29

The fact that the Federal Rules permit Plaintiff to assert claims in the alternative does not change the Court's analysis. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (holding that while "[i]t is certainly true, as Plaintiff argues, that he may plead unjust enrichment in the alternative to his other claims[,] . . . it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019) ("In New York, a plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed."). Therefore, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is granted.

## IV.     LEAVE TO AMEND

The Court grants Plaintiff leave to replead the dismissed claims. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case with respect to the dismissed claims. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Any amended complaint must be filed no later than fourteen days from the date of this order.

## V.     CONCLUSION

Defendant's motion to dismiss the First Amended Complaint is GRANTED in part and DENIED in part. Defendant's motion to dismiss Plaintiff's claims under Sections 349 and 350 of the GBL is DENIED. Defendant's motion to dismiss all other claims is GRANTED. Defendant's

alternative request to strike the class allegations regarding Plaintiff's express warranty claims is

denied without prejudice as a result of the Court's dismissal of the underlying claim.

 The Clerk of Court is directed to terminate the motion pending at Dkt. No. 21.

 SO ORDERED.

Dated:  April 27, 2021
New York, New York

         _____
           GREGORY H. WOODS
          United States District Judge